[Sac. No. 1915. Department Two.—December 12, 1913.]

ALBERT W. SCHOLLE, Respondent, v. JOHN FINNELL,
Jr. et al., Appellants.

CREDITOR'S BILL—FRAUDULENT CONVEYANCES—REMOVAL OF CLOUD ON
TITLE—ACTION NOT BASED ON FRAUD—STATUTE OF LIMITATIONS.—
An action by a judgment creditor, after he has purchased under
execution property conveyed by his debtor in fraud of his creditors,
to have such conveyance declared void, is an action to remove a
cloud from his title. While the question of fraud may be incidental
to the action, still the relief asked is not based upon the fraud
but upon the fact that fraudulent deeds constitute a cloud upon
title, and the relief asked is that this cloud be removed. In such
an action the statute of limitations governing actions for relief on
the ground of fraud has no application.

ID.—ACTION BY CREDITOR OF ESTATE TO SET ASIDE FRAUDULENT CON-
VEYANCES—CLOUD UPON EQUITABLE LIEN OF JUDGMENT—ALLOW-
ANCE OF CLAIM.—The same rule is applicable to an action by a
creditor of the estate of a deceased person, whose claim has been
duly allowed, to set aside conveyances made by the deceased in his
lifetime in fraud of his creditors, and to have it adjudged that he
has an equitable lien on the property, and for an equitable execu-
tion to satisfy it. Such action is in effect one to remove a cloud
upon the equitable lien of the judgment of the plaintiff, acquired
through the allowance of his claim, to the satisfaction of which he
had the right to have subjected the property fraudulently conveyed.
The statute of limitations did not commence to run against the
right to maintain such action until the allowance of the creditors'
claim in probate.

ID.—ALLOWED CLAIM HAS EFFECT OF JUDGMENT.—The allowance of the
claim of such a creditor against the estate of the fraudulent grantor
had the same force and effect as a judgment, and on it the creditor
had a right to maintain an action to set aside the fraudulent trans-
fers made by the debtor and to subject the property to the satis-
faction of his judgment.

ID.—CONVEYANCES IN FRAUD OF CREDITORS ARE VOID.—Conveyances
made by a debtor in fraud of his creditors are not merely voidable
but absolutely void as to such creditors.

ID.—ABSENCE OF LACHES.—It is held, that under the record, the plain-
tiff's right to maintain this action was not barred by laches.

APPEAL from a judgment of the Superior Court of
Tehama County and from orders refusing a new trial. John
F. Ellison, Judge.

The facts are stated in the opinion of the court.

Charles W. Slack, and W. P. Johnson, for Appellants.

Morrison, Cope & Brobeck, Morrison, Dunne & Brobeck, and J. J. Wells, for Respondent.

LORIGAN, J.—This action was brought in Tehama County by the plaintiff as a creditor of John Finnell, deceased, to have set aside several separate conveyances of real property made by him to the four appellants, his sons, all of which, it is claimed, were made by him when insolvent and in fraud of his creditors, particularly the plaintiff; that he be adjudged to have a lien on said property, and for an equitable execution to satisfy it.

The plaintiff had judgment setting aside three of the conveyances as fraudulent and void and granting the relief prayed for, and each of the defendants appeals from that portion of the judgment which affects the conveyance to him. Separate motions for a new trial were made and denied, and each defendant appeals from the order denying his motion. These several appeals, while separately taken, are presented on the same transcript and argued in the same briefs. The same points for a reversal of the judgment and orders are urged, and all of these appeals are considered and disposed of in this opinion.

The complaint, filed March 21, 1907, alleged that the plaintiff loaned to John Finnell at various times between July 5, 1893, and February 10, 1897, divers sums of money aggregating $56,163.75, Finnell delivering promissory notes therefor which from time to time were renewed; that Finnell died in October, 1905; that the defendant, John Finnell, Jr., qualified as administrator of his estate and thereafter plaintiff presented to such administrator his claim against the estate of deceased for the amount then owing to him—$62,178.28—which said claim was allowed January 17, 1906, by the administrator and approved by the judge of the superior court, but no payments have been made thereon; that said John Finnell, deceased, was insolvent from the time of the first loan to him by plaintiff until the time of his death and that his estate was indebted in excess of one hundred and fifty-two thousand dollars and insolvent; that during his lifetime and subsequent to said year 1893, while insolvent and in con-

templation of insolvency, said John Finnell, without con-
sideration therefor, and with intent to defraud his creditors,
particularly plaintiff, made certain deeds to the defendants,
his sons, conveying certain lands in Tehama County and other
counties (the complaint setting forth particularly six con-
veyances with the descriptions of the property therein) ; that
John Finnell up to his death represented to plaintiff that he
was solvent, and relying upon said representation plaintiff
did not bring an action to recover the amount owed him but
from time to time accepted renewals of the notes; that at
most of the times mentioned plaintiff was absent from the
state and during all the time absent from Tehama County
and had no knowledge of the conveyances or of the insolvency
of said Finnell or of his estate or of his intent to defraud his
creditors or plaintiff until after his death; that defendants re-
fused to pay this indebtedness to plaintiff and the administra-
tor refused to bring an action to have said conveyances set
aside or to subject the property so fraudulently conveyed to
the claims of the creditors of the estate and denied that the
said estate had any title or interest in said real property;
that all the defendants had full knowledge when said convey-
ances were made to them respectively that they were made
without consideration and with intent to defraud the creditors
of said John Finnell, particularly plaintiff.

The defendants each answered, denying all the allegations
of the complaint and all set up as a bar to recovery by plain-
tiff the statute of limitations—section 338, subdivision 4, and
section 343 of the Code of Civil Procedure—and the further
defense of laches.

The court made findings in accordance with all the allega-
tions of the complaint except it found that only three of said
conveyances were fraudulent. It found adversely to the de-
fendants on their defenses of the statute of limitations and
laches. The decree declared a lien upon the lands so found
to have been fraudulently conveyed for the amount of the
indebtedness to plaintiff and directed their sale to satisfy such
lien.

The only evidence in the case necessary to refer to is that
respecting the dates of the recordation of these conveyances
declared fraudulent. The complaint alleged that they were
executed by John Finnell, September 30, 1900. The evi-

dence shows that they were also recorded in the recorder's office of Tehama County on that date.

On this appeal appellants urge a reversal on two grounds only. They attack both the sufficiency of the complaint and the findings of the court against their defense of the statute of limitations and of laches.

No demurrer was interposed to the complaint in the court below. It is, however, urged now by appellants that the complaint states no cause of action. Their claim is that this action is for relief on the ground of fraud and was barred by the sections of the code pleaded if not brought within three years after the fraud was committed or within that period after its discovery; that it appears from the complaint that the fraud alleged was perpetrated in September, 1900, and the statute therefore ran in September, 1903, and was a bar to the present action unless its effect be avoided by a statement of facts in the complaint showing that plaintiff had no knowledge of the fraud and did not discover it until later and within three years of the commencement of the action, and in the exercise of due diligence could not have discovered it sooner; that the complaint is entirely barren of any statement of facts showing why in the exercise of due diligence the discovery was not or could not have been made earlier.

We do not think it necessaary to consider specially this attack on the sufficiency of the complaint, because how far, if at all, a creditor proceeding by action to have set aside a fraudulent conveyance is affected by any knowledge or notice of the fraud prior to that time, or whether the statute of limitations respecting actions based on fraud has any application in such a case, is the point to be determined by us under the attack of the appellants upon the findings of the court against their defenses of the statute of limitations and laches.

Their attack on these findings is based on the facts that this action was brought March 21, 1907, and that the deeds which were held by the trial court to be fraudulent and void were recorded on September 30, 1900. From these facts appellants contend (and this is the only point they make) that the recordation of the deeds was notice to the plaintiff of the making of them, of their contents and of the alleged fraud and that the plaintiff thus being notified, the statute com-

menced to run from such recordation and had created a complete bar twice over when this action was commenced.

Whether we would sustain the position of appellants as to the effect of such recordation in a case where the question was properly involved we need not determine, as we are satisfied that in an action of this kind notice or knowledge by the creditor that the conveyances were in fraud of creditors is a false quantity; in other words, that the statute of limitations relied on, applying to actions on the ground of fraud, has no application whatever to an action of this character.

This we think follows from a consideration of a uniform line of decisions in this state in which, while exactly the same relief in a court of equity was not sought as here, yet in principle it was the same, and in our judgment, as far as the availabilty of the statute of limitations by fraudulent grantees is concerned is controlled by the rule laid down in those cases.

This principle was early announced in *Hager* v. *Shindler*, 29 Cal. 47. The defendant Shindler, on March 21, 1855, made a conveyance in fraud of his creditors. Under a judgment against him the land was sold on execution, the plaintiff acquiring the title on October 3, 1857. On January 6, 1860, he brought suit to have the deeds made by Shindler declared fraudulent and void. It will be observed that the action was brought by plaintiff nearly five years after the conveyance. The statute of limitations stood then as it does now, requiring an action based upon fraud to be commenced within three years after the commission of the fraud or its discovery. In the case cited there was no pretense that the plaintiff did not know the facts as to the fraudulent transfer when it was made and the claim was that the cause of action accrued at the date of the deed—March 21, 1855—and was barred three years thereafter. Notwithstanding the knowledge of the fraud, this court held that delay in commencing the action was of no moment; that the statute of limitations relied on did not apply. It was said:

"The cause of action does not consist in the detached or isolated fact that the deeds in question were given with the intent charged. The gravamen of the complaint is that the plaintiff, as owner of the land, is liable to be injured by the deeds if they are allowed to remain uncanceled. The particular danger which the plaintiff seeks to avert neither is nor

can be older than the title which it threatens.   True, the deeds were given more than three years prior to the commencement of the action, but they foreboded no injury to the plaintiff's title when they were given, for at that time he had no title. In short, the plaintiff's right to bring this action does not antedate the facts in which it has its origin.   The plaintiff became the owner of the land on the third day of October, 1857, when he received the sheriff's deed; and he had then, for the first time, a title to be clouded.   The action was brought within three years thereafter.''

In *Stewart* v. *Thompson*, 32 Cal. 260, one Blake recovered judgment on March 19, 1858, on a promissory note of Brown, falling due June 1, 1856.   In September, 1857, Brown conveyed the land in fraud of his creditors, the deed being recorded about the time it was given.   Blake caused the property to be levied on and sold in April, 1859, as Brown's, purchasing it at such sale.   He conveyed to the plaintiff Stewart in September, 1862, who, in April, 1863, commenced an action claiming that the deed by Brown was a cloud on his title. Defendant, as here, relied on the statute of limitations.   The court said (Sanderson, J.) :

''We consider that the limitation of three years does not apply to an action of this character. . . . We so held in effect in *Hager* v. *Schindler*, 29 Cal. 60.   The gravamen of the action is that the conveyances of which complaint is made, are clouds upon the title, and for that reason, and that only, their cancellation is asked.   The right of the plaintiff to his relief does not depend altogether upon the question whether they are tainted with fraud, but upon the fact that they are clouds. . . . Hence fraud is a false quantity when we come to assign an action of this character to its proper class under the statute of limitations.   If fraud exists, it does so merely as a feature in the case, and not as a test of the true nature of the cause of action within the meaning of the statute,'' and as is said in the concurring opinion of Sawyer, J., ''I was at first inclined to the opinion that this case fell under the fourth clause of the seventeenth section of the Statute of Limitations, under which 'an action for relief on the ground of fraud' is barred in three years; but upon further reflection I think it does not.   The deeds in question, it is true, had their origin in fraud.   The first in order was made with

intent to defraud a creditor. The creditor proceeded to obtain his judgment, sell the land, and obtain a sheriff's deed, regardless of the deed made for the purpose of defrauding him. The fraudulent deed was void as to him—an absolute nullity—and for this reason was not in his way. After obtaining his sheriff's deed, he was in a position to recover possession of the land, notwithstanding the fraudulent conveyance, without first procuring its cancellation in equity. . . . The creditor could protect himself against it at law, and there was no necessity for going into equity for a remedy. The only substantial remedy to him, requiring relief in equity, therefore is, that being upon the record, the void deed is a cloud upon the title of the creditor and those claiming under him, and this is the real ground of the relief sought in this action. The object sought is only to remove the cloud which casts its shadow upon the title. For these reasons, I think the case not within the bar of three years." (See, also, *Chalmers* v. *Sheehy*, 132 Cal. 459, [84 Am. St. Rep. 62, 64 Pac. 709].)

The principle laid down in these cases is that an action by a judgment creditor, after he has purchased under execution property conveyed by his debtor in fraud of his creditors, to have such conveyance declared void is an action to remove a cloud from his title; that while the question of fraud may be incidental to the action, still the relief asked is not based upon the fraud but upon the fact that fraudulent deeds constitute a cloud upon title and the relief asked is that this cloud be removed and in such an action the statute of limitations has no application.

We think that the present action brought by the plaintiff is in effect an action to remove a cloud on title. Not as in the cases cited, from the legal title acquired under sale made upon a judgment secured by the creditor against the fraudulent debtor, but as a cloud upon the equitable lien of the judgment of plaintiff to the satisfaction of which he had the right to have subjected the property fraudulently conveyed.

The allowance of the claim in the estate of Finnell had the same force and effect as a judgment and on it the plaintiff had a right to maintain an action to set aside the fraudulent transfers made by the debtor and to subject the property to the satisfaction of his judgment. (*Ohm* v. *Superior Court*,

85 Cal. 545, [20 Am. St. Rep. 245, 26 Pac. 244].)    And while
the relief asked in the cases we have cited was different to
some extent from the relief prayed for and awarded the
plaintiff in the present action, we do not perceive that it was
of such substantial difference as to affect the principle an-
nounced in those cases or render it inapplicable here.

The only fact which put plaintiff in a position whereby ap-
pellants would be entitled to rely upon the bar of the statute
which they pleaded was the death of Finnell.    Had the latter
lived, as the indebtedness he owed plaintiff was a valid and
subsisting one, the plaintiff, even had he actually known
at the time these conveyances were made by Finnell to appel-
lants that they were fraudulent as to him, might have waited
until the very last day of the period during which he might
bring an action upon these notes, before doing so.    After
procuring a judgment against Finnell he might likewise have
waited until about the expiration of the period within which
an execution on his judgment might issue, could then have
had it issued and a sale made of the property as the property
of Finnell standing in the name of these appellants.    As the
conveyances to the appellants were fraudulent they were not
merely voidable but absolutely void as to the creditors of Fin-
nell (Civ. Code, sec. 3442; *Hager* v. *Shindler,* 29 Cal. 47;
*Stewart* v. *Thompson,* 32 Cal. 260; *Chalmers* v. *Sheehy,* 132
Cal. 459, [84 Am. St. Rep. 62, 64, Pac. 709]; *Judson* v. *Ly-
ford,* 84 Cal. 505, [24 Pac. 286]), and under the sale plain-
tiff would acquire full legal and equitable title to the prop-
erty.    Plaintiff after securing his deed might then have
waited almost five years before bringing an action against
appellants to set aside and cancel the deeds made to them as
a cloud upon his title, and while it would appear that the
plaintiff had in fact knowledge of the fraud for a period dur-
ing which, if applicable, the statute of limitations had run
time and time again, still under such a situation of marked
delay it is settled by the authorities we have referred to that
the statute of limitations respecting actions on the ground of
fraud relied on by appellants would have no place and would
not be available to the grantees under the fraudulent con-
veyances.

As this protection would have been afforded plaintiff
against the assertion of the bar of the statute of limitations

had Finnell lived and the plaintiff had obtained execution and sale of the property, the fact that Finnell died and the law compelled plaintiff to prove his claim in probate ought not to deprive him of the relief he asks in the present action, if it is but the equivalent of what he might have had if Finnell had not died. The death of Finnell did not make his fraudulent conveyances any more effective than they were when he was alive. They were wholly void as against his creditors when they were made and his death did not impart any vitality to them. There are no equitable considerations disclosed here which would require the court to deny the application of the principles laid down in *Hager* v. *Shindler* and the other authorities to the case at bar. The trial court found that when these conveyances were made Finnell was insolvent; that they were made without consideration; that appellants knew of such insolvency at the time and that they were fraudulent and void as to creditors. Appellants do not question the sufficiency of the evidence to sustain these findings; they rely simply on the claim that their technical defenses of the statute of limitations and laches should have been sustained; defenses they would have no right to assert had plaintiff proceeded against Finnell in his lifetime but which they rely on by reason of his death. As suggested, if this may be done then the incongruous result follows that while a creditor may treat these deeds as void during the lifetime of his debtor he is deprived of the right of having their nullity declared after the debtor's death. Such a result should not be permitted unless there are existing principles marking such a radical distinction between the relief sought in the cited cases and that sought here that the rule laid down in the former may not be invoked. While of course statutes of limitation may be successfully interposed, still courts of equity are not disposed to insist upon particular forms of procedure or to draw nice distinctions between the nature of the relief which should be sought by creditors in order to support grantees in the retention of property fraudulently obtained.

Certainly the plaintiff after the allowance of his claim in probate—which as pointed out had the force and effect of a judgment—was required in some form of action to proceed to have these deeds judicially declared nullities as they were

in fact, and to subject the property to the equitable lien of his judgment, and it is not suggested that he could have proceeded in any different way than he has done. Nor do we perceive that in doing so he is asking for relief either radically or substantially different from what he might have been entitled to had Finnell lived and after resorting to his right at law had sought a court of equity to have the cloud of these fraudulent deeds removed from his legal title.

Whether a creditor proceeds in equity after judgment, execution, and sale to set aside fraudulent deeds of his debtor or proceeds upon his allowed claim in probate as a judgment to set aside similar conveyances there is no substantial difference in the relief sought. In the one case he seeks to have the fraudulent deeds set aside as a cloud upon the title which by virtue of his judgment and sale thereunder he acquired. In the other by virtue of his judgment (because an execution and sale is denied him through the circumstances of his debtor's death) he seeks to have the fraudulent deeds declared void and the property subjected to the equitable lien under his judgment. In either case the actions are substantially to obtain the same relief; to have the conveyances declared void as clouds upon title. In the one case as a cloud upon the legal title; in the other as a cloud upon the lien of the judgment of plaintiff. Though fraud may be involved in either case it is not the gist of the action. To apply the language of the court in *Hager* v. *Shindler* to this case the "cause of action does not consist in the detached or isolated fact that the deeds in question were given with the intent charged"—in fraud of creditors—but of the fact that the conveyances were a cloud upon title. The right of the plaintiff to bring his action in the case cited it is there said did "not antedate the facts in which it had its origin." Neither did the right of the plaintiff here. His right originated with the allowance of his claim in probate. When he secured this judgment for the first time these fraudulent deeds constituted a cloud upon the equitable lien which under it he was entitled to enforce against them.

This was the character of the relief that the court granted to plaintiff. It declared the conveyances void, impressed the property with a lien in favor of plaintiff under his judgment and directed its sale for the purpose of satisfying it.

In this view the present action must be governed by the principle announced in *Hager* v. *Shindler* and the bar of the section of the statute of limitations relied on by appellants has no application. It equally follows that the other defense of laches is governed by the same principle.

We do not discuss the further point made by the appellants that the statute of limitations and the bar of laches could not in any event commence to run until a judgment at law has been obtained by the creditor, or what was equivalent to such a judgment, the allowance of his claim in probate proceedings, and that as the action was brought immediately after the allowance of the claim of plaintiff no bar could occur, respondent citing *Forde* v. *Exempt Fire Co.*, 50 Cal. 299; *Brown* v. *Campbell*, 100 Cal. 635, [38 Am. St. Rep. 314, 35 Pac. 433]. We are satisfied to dispose of the case upon the broader principle laid down in *Hager* v. *Shindler* and the cases following it which in our judgment effectually dispose of the defenses relied on by the appellants and under which the findings attacked must be sustained.

The judgment and orders appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.

Hearing in Bank denied.

In denying a hearing in Bank the court rendered the following opinion on January 10, 1914:

THE COURT.—The petition for rehearing in this case is denied. The statement in the opinion that ''it equally follows that the other defense of laches is governed by the same principle'' is not to be taken as holding that laches is to be governed by the same rule as applies to limitations, but only that under the record in this case no laches is shown.