[S. F. No. 16711. In Bank. July 16, 1942.]

ALBERTO PUCCETTI, Plaintiff; GEMMA PUCCETTI, as Administratrix, etc. (Substituted Plaintiff), Appellant, v. MADELINE GIROLA et al., Respondents.

Jesse G. Benson for Appellant.

John J. Beck, Altman & Ellis, John C. Altman and Wil‑ lard L. Ellis, Donahue, Richards & Hamlin and A. R. Rowell for Respondents.

TRAYNOR, J.—On April 21, 1931, Alberto Puccetti com‑ menced an action against Girola Bros., a corporation, Henry Girola, its president and sole stockholder, and others for fraudulently inducing him to purchase stock in a subsidiary corporation. Before that suit was filed, Girola Bros. had changed its name to Madalay, Inc., and while the action was pending, it conveyed by quitclaim deeds certain real prop‑ erty to defendant Madeline Girola, a director of Girola Bros. and the mother of Henry Girola. The deeds, recorded by Madeline Girola, set forth Madalay, Inc., as grantor, but

failed to set forth the name in which Madalay Inc. derived title to the realty as required by section 1096 of the Civil Code. On November 1, 1933, Puccetti obtained a judgment, and on July 9, 1937, recorded an abstract thereof and a writ of execution levying upon all the right, title, and interest of the judgment debtors in the property. On August 18, 1937, Madeline Girola executed a mortgage on the property to defendant State Finance Company which recorded it on October 8, 1937. On November 8, 1937, Puccetti purchased the land at an execution sale and on that day recorded the sheriff's certificate of sale. On December 9, 1938, he recorded the sheriff's deed conveying the property to him. He then brought this action to quiet title to the land, claiming that the conveyance to Madeline Girola was void because it failed to comply with section 1096 of the Civil Code and because it was in fraud of creditors.

The trial court made findings in favor of defendants and granted the cross-complaint of Madeline Girola, quieting title in her. Puccetti has appealed from the judgment. Following his death during the pendency of the appeal, his administratrix, Gemma Puccetti, was substituted as plaintiff and appellant.

It is admitted that the conveyance from Madalay Inc. to Madeline Girola failed to comply with section 1096 of the Civil Code, providing ''Any person in whom the title of real estate is vested, who shall afterwards, from any cause, have his or her name changed, must in any conveyance of said real estate so held, set forth the name in which he or she derived title to said real estate.'' Appellant contends that the requirements of this section are mandatory and that a deed in violation thereof does not pass legal title. Respondents argue that the section must be construed to have the same effect as the recording statutes embodied in sections 1213-1218 of the Civil Code, so that a conveyance in disregard thereof can be attacked only by a subsequent purchaser or encumbrancer for value without notice of the change of name by the original owner.

Section 1096 was originally enacted in 1874 following a suggestion of the court in *Fallon* v. *Kehoe,* 38 Cal. 44 [99 Am. Dec. 347]. In that case, land had been conveyed to Jeremiah Fallon in his nickname, Darby O'Fallon. He conveyed the land in his true name before the enactment of the recording act, and following its enactment he made another

conveyance in the name under which he had derived title. In a suit between the successive grantees, the court held that the first grantee was entitled to prevail under the common law rule that whatever the name in which the true owner conveyed the property, the conveyances as between grantor and grantee transferred the title. Recordation of the first deed was held to be constructive notice to subsequent purchasers even though a search of the record would not have disclosed the earlier deed, which was out of the grantor's chain of title.

Section 1096 seeks to prevent any opportunity for fraud in comparable situations by requiring a grantor who conveys land by a name other than that in which he derived title to recite the change of name in the conveyance. It thus abrogates the common-law rule relied upon in the Fallon case by precluding any conveyance that would appear in the record as a "wild deed" from giving rise to multiple chains of title. Its language is mandatory and nowhere suggests that compliance is excused when a subsequent purchaser has notice of the change in name. It was placed in the chapter entitled "Transfers of Real Property" and grouped with other sections under the heading "Mode of Transfer." Section 1095 in the same chapter provides in similar language that "When an attorney in fact executes an instrument transferring an estate in real property, he must subscribe the name of the principal to it, and his own name as attorney in fact," and it has been held that failure to follow the mandate of that section renders a deed void. (*Morrison* v. *Bowman*, 29 Cal. 337; *Mitchell* v. *Benjamin Franklin Bonding & Indemnity Corp.*, 13 Cal. App. (2d) 447 [57 P. (2d) 185].)

The deeds from Madalay, Inc. to Madeline Girola were therefore inoperative to pass legal title, and title remained in the grantor corporation in the absence of a reformation of the deeds to comply with Civil Code section 1096 or of an adjudication of the identity of the grantor under section 751(a) of the Code of Civil Procedure. The property was thus subject to Puccetti's levy of execution and passed to him by virtue of the sheriff's sale and deed. (Code Civ. Proc., § 700; *Freelon* v. *Adrian*, 161 Cal. 13, 18 [118 Pac. 220].) ▪ Had Madeline Girola paid value for the conveyance, she would have an equity in the land that would take priority over the rights of a subse-

quent purchaser at an execution sale with notice of her interest. (*Whitney* v. *Sherman,* 178 Cal. 435 [173 Pac. 931]; *Riley* v. *Martinelli,* 97 Cal. 575 [32 Pac. 579, 33 Am. St. Rep. 209, 21 L. R. A. 33]. See, also, cases cited in 11 Cal. Jur., p. 123.) ■ ■ The trial court's finding, however, that the deeds to Madeline Girola were not entirely voluntary is without support in the evidence, which presents no conflict. Both Madeline Girola, the grantee, and Josephine Girola, secretary of the grantor corporation, testified that no money was paid and no property transferred by the grantee in consideration of the conveyance. The claimed consideration was alleged to have arisen from the following transaction: Henry, Joseph, and Josephine Girola, who were all members of the Girola family and directors of Girola Bros., received salaries from a subsidiary corporation, which they deposited in the bank accounts of Girola Bros. A large part of this money they drew out in cash, and another part of the money was expended by the corporation for the household expenses of members of the family. The books of the corporation showed that it owed them, at one time, a total of $54,523.46. All these accounts, however, were marked as closed on January 1, 1932. On April 28, 1932, the parties met in the office of their lawyer, where Henry, Joseph, and Josephine Girola executed gratuitous assignments to their mother, Madeline Girola, of the amounts that the books showed the corporation owed them. Madeline Girola immediately executed a cancellation in favor of Madalay, Inc. of the amounts so assigned and received a conveyance of the property. Since the accounts assigned to Madeline Girola were marked closed several months before the purported assignments they were presumably valueless, and their cancellation would not constitute consideration for the deeds. Moreover, even if these accounts had been subsisting the consideration would have been furnished in substance and effect by the grantor. The consequences that ordinarily follow the observance of the separate identity of a corporation and the persons who compose it are disregarded when it is necessary to protect the rights of third persons or to prevent injustice. (*D. N. & E. Walter & Co.* v. *Zuckerman,* 214 Cal. 418 [6 P. (2d) 251, 79 A. L. R. 329]; *Wenban Estate, Inc.* v. *Hewlett,* 193 Cal. 675 [227 Pac. 723]; *Minifie* v. *Rowley,* 187 Cal. 481 [202 Pac. 673]. See, also, cases cited in 6A Cal. Jur. 80.) The presence of a colorable consideration does not alter the nature of the

transaction or the fact that Madeline Girola failed to give value for the deeds.

The parties stipulated that a lien asserted by the defendant Bank of America National Trust and Savings Association and arising from a deed of trust executed by Girola Bros. before the transactions involved herein is a good and subsisting lien and that it will remain so regardless of the outcome of this action. Defendant State Finance Company also asserts a lien by virtue of a mortgage executed by Madeline Girola after the alleged conveyance to her by Madalay, Inc. Since Madeline Girola acquired no interest in the property, however, the finance company acquired no security for its mortgage. (*Trout* v. *Taylor,* 220 Cal. 652 [32 P. (2d) 968]; *Promis* v. *Duke,* 208 Cal. 420 [281 Pac. 613]; *Gould* v. *Wise,* 97 Cal. 532 [32 Pac. 576, 33 Pac. 323].) The finance company dealt with Madeline Girola at its own risk except for the protection offered by the record, and a search would have revealed no predecessor in interest of record to Madeline Girola's grantor, an omission that would put a prudent person on inquiry.

The judgment is reversed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., and Carter, J., concurred.

Respondent Girola's petition for a rehearing was denied August 10, 1942.