[Civ. No. 12590. First Dist., Div. Two. Mar. 9, 1944.]

GEMMA PUCCETTI, as Administratrix, etc., Respondent, v. MADELINE GIROLA et al., Appellants.

242

William Steinberg for Appellants.

Jesse G. Benson for Respondent.

SPENCE, J.—This action was filed by plaintiff Alberto Puccetti, now deceased, who was the purchaser of certain real property upon an execution sale. Said sale had been held as the result of an action in which plaintiff Alberto Puccetti had recovered a judgment against defendants Girola Bros., a corporation, and Henry Girola, which judgment was based upon the fraudulent sale by defendants Girola Bros. and Henry Girola to plaintiff of stock in a subsidiary cor-

poration. Plaintiff sought in the present action to quiet his title to the real property so purchased, to have certain deeds thereto from defendant Girola Bros. to defendant Madeline Girola declared void and to eject defendants from the premises. The first trial of this action resulted in a judgment in favor of defendants, which judgment was reversed on appeal. (*Puccetti* v. *Girola,* 20 Cal.2d 574 [128 P.2d 13]). Plaintiff Alberto Puccetti died during the pendency of the first appeal and the administratrix of his estate was substituted in his stead. For the sake of convenience, the word "plaintiff" will be used herein to designate either the deceased or his administratrix. Upon the second trial of the action, plaintiff recovered judgment against defendants and from said judgment, defendants have appealed. Defendant Madeline Girola is the real party in interest among the defendants and is the only defendant on whose behalf briefs have been filed. Wherever the word "defendant" may be used herein without naming a particular defendant, said word will be used to designate defendant Madeline Girola.

One of the contentions of defendant on this appeal is that the evidence was insufficient to sustain the findings of the trial court relating to the alleged fraudulent conveyances of the real property from defendant Girola Bros. to defendant Madeline Girola. The question of fraud was not discussed in the opinion on the first appeal as the conveyances were there declared inoperative to pass legal title because of the failure of the grantor to comply with the mandatory provisions of section 1096 of the Civil Code. But fraud had been pleaded by plaintiff with respect to said conveyances and the trial court found upon the second trial that the conveyances were fraudulent. These findings, if supported by the evidence, are material in connection with the consideration of other contentions made by said defendant and we shall therefore discuss said findings and the evidence produced in support thereof.

We have heretofore referred to Girola Bros., a corporation, but the grantor named in said conveyances was Madaly, Inc. Said corporation was originally named Girola Bros., and the name was later changed to Madaly, Inc. and was still later changed to Inter-City Realty Company. The real property was originally conveyed to the corporation while named Girola Bros. and the conveyances from Madaly, Inc. to Made-

line Girola, which were made in April 1932, failed to set forth the name in which the corporation had acquired title. On the second trial, the trial court found as follows:

## "XII

"That it is true that said three purported deeds from defendant Inter-City Realty Company, then known as Madaly, Inc., formerly Girola Bros., a California corporation, were made with the purpose and intent of said corporation and its officers, Henry Girola and Josephine Girola, and on the part of Madeline Girola, the intended grantee, of defrauding Alberto Puccetti and of hindering, delaying and preventing him from collecting his said judgment above referred to."

## "XXVIII

"That defendant and cross-complainant Madeline Girola was an active participant in the fraudulent attempt and design on the part of defendants herein to defraud Alberto Puccetti by preventing him from collecting his said judgment. That upon April 29, 1932, the date of said attempted transfer of said real property to Madeline Girola she was a director of the grantor corporation and as such director passed upon and approved the transfer by said corporation to herself of said real property without any consideration therefor with full knowledge that said attempted transfer if carried out would render said grantor corporation insolvent and prevent Alberto Puccetti from collecting his said judgment."

There was a large amount of evidence produced, including numerous exhibits, to support the allegations upon which said findings were based. This evidence shows many significant facts in connection with the numerous business ventures and manipulations of the Girola family. The family engaged among other things in the business of selling and financing automotive equipment including trucks, trailers and the like. Their several ventures were carried on largely through corporations, the stock of which corporations was in some instances issued in its entirety to one or more members of the family with other members of the family serving as directors. In other instances one or more members of the family controlled the corporation with other members serving as directors but the stock was sold at least in part to the public. Among the several corporations was the corporation known as Girola Bros., later known as Madaly, Inc. and later

known as Inter-City Realty Company. There were also Capital Credit Company, Continental Seaboard Corporation, Continental Equities and others. Throughout this discussion we will refer to Girola Bros. by that name regardless of the subsequent changes of its name.

The family consisted of the father Frank Girola, now deceased, the mother Madeline Girola, and the adult sons and daughter, Henry Girola, Joseph Girola, Josephine Girola and Armand Girola. Henry Girola was the sole stockholder in Girola Bros. from 1927 until the forfeiture of its charter in 1933. Madeline Girola was the sole stockholder in Capital Credit Company at all times up to the time of the filing of this action. The remaining corporations were controlled by Henry Girola but stock was sold to the public. Henry Girola was the president and Josephine Girola was the secretary of Girola Bros. and the same was true of all, or practically all, of said corporations. Madeline Girola was a director of Girola Bros. but was not a director of the above named corporations which had sold stock to the public.

Shortly before the disputed conveyances were made in April, 1932, there were numerous actions filed against the various corporations and some of the members of the Girola family. The former action brought by plaintiff, based upon the alleged fraudulent sale of stock, was then pending and thereafter a default judgment was entered in 1933 against Girola Bros. and Henry Girola. Other persons had brought similar actions based upon alleged fraudulent sales of stock and said actions were pending at the time the disputed conveyances were made. In certain other actions, instituted in early 1932, stockholders in the corporations in which stock had been sold to the public sought to take the control of these corporations from Henry Girola and the Girola family. In these actions, the members of the Girola family, other than Madeline Girola who was not a director in the last mentioned corporations, were charged with fraud, mismanagement, making of false statements, taking secret profits and drawing exorbitant salaries when the corporations were on the verge of bankruptcy. The funds withdrawn from these corporations had been turned into the treasury of Girola Bros. and reference thereto will be found in the opinion on the first appeal. One of the last mentioned actions was filed two days before the disputed conveyances were made. These convey-

ances were made on April 29, 1932 and were recorded the following day. Twelve days later Henry Girola entered into an agreement to turn over control of the Continental Seaboard Corporation to the stockholders and on May 17, 1932, all the Girolas who were directors thereof filed resignations which were accepted on May 19, 1932. Shortly thereafter Continental Seaboard Corporation was adjudicated a bankrupt and the creditors finally received but seven-tenths of one per cent on their claims. At about the same time, Seaboard Equities was likewise adjudicated a bankrupt.

The Girola family had previously taken what appeared to them to be some appropriate steps with respect to Girola Bros. in view of the impending financial collapse of all corporations controlled by Henry Girola and in view of the pending actions against Girola Bros. and Henry Girola. The books of said corporation show that on or about January 1, 1932, all accounts had been closed and all assets had been removed from said corporation with the exception of the real property which was the subject of the disputed conveyances. Under date of April 29, 1932, Henry Girola, Joseph Girola, Josephine Girola and Armand Girola, who were all directors of the Girola Bros., executed purported assignments to Madeline Girola of all sums claimed to be due to them from Girola Bros. These accounts had been marked as closed as of January 1, 1932, on the books of the corporation. There was no consideration for said assignments to Madeline Girola who was also a director of Girola Bros. In this connection it is significant to note that Madeline Girola was the only one of the group who was not a director in the corporations which had sold stock to the public. On the same day, Madeline Girola made a written offer to Girola Bros. to accept the three parcels of real property which were the subject of the disputed conveyances "subject to the encumbrances . . . in full payment" of the assigned claims. The offer was immediately accepted and the conveyances were executed on said April 29, 1932. On the first appeal, it was held under this state of facts that the trial court's finding "that the deeds to Madeline Girola were not entirely voluntary is without support in the evidence, which presents no conflict." (*Puccetti v. Girola*, 20 Cal.2d 574, 578 [128 P.2d 13].)

After plaintiff obtained his default judgment against Girola Bros. and Henry Girola in the former action in 1933, he caused five executions to be issued during the years 1934

to 1937, all of which executions were returned wholly unsatisfied. The final execution under which the execution sale was made was issued in 1937 and the sheriff's sale of the real property in question was made to plaintiff on November 8, 1937. Plaintiff commenced this action on December 1, 1937.

Defendant contends that the evidence was insufficient to sustain either the above quoted findings relating to actual fraud (see Civil Code, section 3439, prior to the 1939 amendment thereof) or other findings relating to constructive fraud. (See Civil Code, section 3442, prior to the 1939 amendment thereof.) We find no merit in this contention. The trial court was entirely justified in inferring that all the directors, including Madeline Girola, knew of the condition of the affairs of Girola Bros. and in further inferring that the disputed conveyances were made with an actual intent on the part of all, including Madeline Girola, to defraud plaintiff as a creditor of Girola Bros. and Henry Girola. This inference was strengthened by the evidence of Madeline Girola and Josephine Girola offered by defendants on the second trial, some of which testimony was conclusively shown by documentary evidence to be false in its material aspects and much of which appeared to be evasive and unsatisfactory. Having concluded that the evidence was sufficient to sustain the above mentioned findings relating to actual fraud, it would serve no useful purpose to discuss the question of whether the evidence was sufficient to sustain the findings relating to constructive fraud.

We now turn to the contentions of defendant with respect to the defense of the statute of limitations. After the first appeal, defendants placed their principal reliance upon that defense. Defendant Madeline Girola now contends that plaintiff's alleged causes of action were barred by the provisions of sections 318, 319 and 338, subdivision 4, of the Code of Civil Procedure; that she acquired title by prescription by virtue of the provisions of section 322 of the Code of Civil Procedure; and that the trial court's findings to the contrary are not sustained by the evidence. In this connection, it is conceded by all that Madeline Girola went into possession in 1932 and continued to occupy a portion of the premises, to lease the remaining portions thereof, to collect the rents and to pay the taxes until the commencement of this action on December 1, 1937.

In our opinion, defendant's last mentioned contentions are based in part upon a misconception of the nature of plaintiff's action. Said action was primarily and essentially one brought by a creditor who was the purchaser at an execution sale to quiet his title to the property purchased by removing the clouds upon the title resulting from void deeds which had been made with an actual intent, on the part of the grantor and grantee, to defraud said creditor. Plaintiff's cause of action to quiet title did not accrue prior to the sale and the mere fact that the clouds had their inception in fraud did not render applicable the three year statute relating to actions for relief on the ground of fraud. (Code Civ. Proc., sec. 338, subd. 4.) As was said in the early case of *Stewart* v. *Thompson,* 32 Cal. 260 at page 263, "It is true that the clouds in question have their inception in fraud; but fraud is not a universal characteristic of the cause of action and cannot, therefore, be adopted as a test of the true nature of the action, when its position in the various categories presented by the statute of limitations comes to be considered." (See, also, *Scholle* v. *Finnell,* 166 Cal. 546 [137 P. 241]; *Hager* v. *Shindler,* 29 Cal. 47). Having concluded that the three year statute was inapplicable, the question arises as to whether defendant could avail herself of the five year statutes (Code Civ. Proc., secs. 318, 319, 322) for the purpose of defeating plaintiff's action. We believe the answer to this question is found in the concurring opinion of Mr. Justice Sawyer in *Stewart* v. *Thompson,* 32 Cal. 260 at page 265, where he said, "As to the creditor, the fraudulent conveyance was void. Notwithstanding this conveyance, therefore, so far as the rights of the creditor are concerned, the title never passed to the grantee of the debtor until the sale under execution and the making of the sheriff's deed under which the plaintiff claims. Until that time, as to the creditor, the title must be regarded as remaining in the debtor; and his grantee, who participated in the fraud, must be regarded as being in possession with the debtor's assent, and not adversely to the creditor, his right being subject to be divested by a sale under execution against his grantor in favor of the creditor defrauded." This reasoning was approved in the later case of *Scholle* v. *Finnell,* 166 Cal. 546 [137 P. 241]. The rule thus established leads to the conclusion that in this action to quiet title, brought by the defrauded creditor who was the purchaser at the execution sale, the law will not treat

as adverse, for the purpose of the fraudulent grantee's defense of the statute of limitations or for the purpose of the fraudulent grantee's claim of title by prescription, any possession by the fraudulent grantee prior to the execution sale. We are therefore of the opinion that the trial court correctly concluded that none of the above mentioned code sections barred plaintiff's action.

In the reply brief, defendant recognizes the force of the foregoing authorities and makes a complete shift in the theory of her defense. The cause was tried in the trial court and argued in the opening brief upon theory that plaintiff's action was commenced too late and was therefore barred. In the reply brief defendant argues for the first time that plaintiff's action was commenced prematurely rather than too late. As this point is raised for the first time in the reply brief, it would be a sufficient answer to say that we are not required to act upon it. (*Truelsen* v. *Nelson*, 42 Cal.App.2d 750 [109 P.2d 996]; *Tagus Ranch Co.* v. *First National Bank*, 7 Cal. App.2d 457 [46 P.2d 809]; *Lady* v. *Palen*, 12 Cal.App.2d 3 [54 P.2d 1133]; *Lotts* v. *Board of Park Commrs.*, 13 Cal. App.2d 625 [57 P.2d 215].) We may state however that we do not believe that there is any merit in the point. The sheriff's sale was held on November 8, 1937, and the sheriff's certificate of sale was recorded on the same day. This action was commenced on December 1, 1937. The sheriff's deed to plaintiff was executed and recorded on December 9, 1938. While the action was commenced after the execution and recordation of the sheriff's certificate of sale but before the execution and recordation of the sheriff's deed, we do not believe the action was prematurely brought. Defendant relies upon certain language used in the cases cited above but in none of said cases was the claim of premature commencement of the action raised or involved. The claim of premature commencement was raised and decided adversely to the contention made in defendant's reply brief in *Truelsen* v. *Nelson*, 42 Cal.App.2d 750 [109 P.2d 996].

Defendant further contends that even assuming that the conveyances were fraudulent, defendant "would be entitled to a prior lien on the real property for monies paid out for principal, interest, taxes, insurance and upkeep." There appears to be some conflict of authority regarding the right, if any, which a grantee who is guilty of actual fraud may

have to reimbursement for various expenditures made in connection with the property fraudulently conveyed. (Compare *McMillan* v. *O'Brien,* 219 Cal. 775 [29 P.2d 183]; *Ackerman* v. *Merle,* 137 Cal. 169 [69 P. 983]; *Butler* v. *San Francisco Gas Co.,* 168 Cal. 32 [141 P. 818]; and authorities cited in note in 8 A.L.R. 527). But the answer to defendants' contention here is found in the findings of the trial court as follows:

## "XXIX

''Cross-complainant Madeline Girola has not sustained her burden of proving that any sums that she may have spent for principal and interest on the said deed of trust against said property and for insurance, taxes and repairs on the said real property were not paid out of the rents and profits of the property itself.''

## "XXX

''The reasonable rental value of the said real property from the date of said fraudulent conveyance to the date of judgment herein has exceeded the expenses of interest, principal, taxes, repairs and insurance upon said real property.''

■ Contrary to the claim of defendant, there was ample evidence to justify finding XXIX. There was a conflict as to the nature of the business of, and the amount of space occupied by, Capital Credit Company on the premises. That company was wholly owned by defendant. There was also a conflict regarding the rents received. Reference has heretofore been made to the false, evasive and unsatisfactory evidence offered by defendants and the trial court was entirely justified in making finding XXIX in view of the nature of that testimony. Defendant apparently concedes that the evidence was sufficient to support finding XXX but as we understand defendant's reply brief, she claims that she would only ''be liable'' for the reasonable rental value of the premises from and after November 8, 1937, the date of the sheriff's sale, and not from and after April 29, 1932, the date of the fraudulent conveyances. ■ Defendant cites and relies upon section 707 of the Code of Civil Procedure. In our opinion, said section is not applicable to the situation presented on this appeal. It specifies that ''from the time of the sale until a redemption'' the purchaser at the execution sale ''is entitled to receive, from the tenant in possession, the rents of the property sold, or the value of the use and occupation

thereof.'' This section covers the right of the ordinary purchaser on the ordinary execution sale to the rents or value of the use of the property from and after the time of the sale. The judgment in the present case allowed plaintiff no recovery of any rents. ■ The question arises here upon defendant's claim that she was entitled to an equitable lien against the property for all expenditures made by her from and after April 29, 1932, the date of the fraudulent conveyances. In determining such claim to an equitable lien for all expenditures made by the fraudulent grantee during that entire period, the most elementary principles of equity require that the reasonable value of the use of the premises during the entire period should be off set against such expenditures. Such was the conclusion of the trial court and we are entirely in accord. Any other conclusion would result in permitting defendant to derive an advantage from her own fraudulent acts. (Bump, Fraudulent Conveyances (2d ed.) 593.)

■ Defendant includes a heading in her brief which reads ''Madeline Girola gave adequate consideration for the real property in question.'' In view of our conclusion that there was ample evidence to sustain the findings of actual fraud on the part of defendant, the judgment declaring the deeds void is supported regardless of whether there was sufficient evidence to support the finding that there was no consideration for the deeds. (*Rossen* v. *Villanueva,* 175 Cal. 632 [166 P. 1004]; *Abbey* v. *Zimmerman,* 12 Cal.App.2d 311 [55 P.2d 903].) But under this heading, defendant quotes from the opinion on the first appeal as follows: ''Had Madeline Girola paid value for the conveyance, she would have an equity in the land that would take priority over the rights of a subsequent purchaser at an execution sale with notice of her interest.'' (*Puccetti* v. *Girola,* 20 Cal.2d 574, 577 [128 P.2d 13].). It therefore appears that defendant may be making this point in connection with her claim to an equitable lien. The court further said, however, on the first appeal, ''The presence of a colorable consideration does not alter the nature of the transaction or the fact that Madeline Girola failed to give value for the deeds.'' (*Puccetti* v. *Girola,* 20 Cal.2d 574, 578 [128 P.2d 13].) On the second trial and after the Supreme Court had decided on the first appeal that the evidence on the first trial was insufficient to support the finding that the conveyances were not entirely voluntary, defendant in-

troduced evidence to show that on April 30, 1932, being the day after the execution of the disputed conveyances, defendant executed to the bank a written guarantee of the payment of the encumbrance on the premises. This evidence constitutes the sole basis for defendant's claim on this appeal that she gave adequate consideration for the conveyances. If the record before us showed that defendant had agreed to guaranty the payment of the encumbrance on the premises conveyed in consideration of the conveyances, a question would be presented upon which neither side has presented any authority directly in point. ██ Assuming that such agreement to guaranty the indebtedness on the property conveyed would constitute "consideration" for the conveyances, we are satisfied that it would not constitute the giving or the payment of "value" within the meaning of the decision on the first appeal so as to support defendant's claim to a so-called "equity" or "equitable lien" that would take priority over the rights of plaintiff as the purchaser at the execution sale. ██ But in any event, the record before us fails to show that there was any agreement made by defendant to guaranty the encumbrance in consideration of the conveyances. The written offer of defendant to Girola Bros. showed that she merely agreed to accept the conveyances "subject to the encumbrances" upon a purported consideration of the cancellation of certain assigned claims, which cancellation was held on the first appeal to constitute no consideration. The mere showing that after the execution of the conveyances, defendant did guaranty to the bank the payment of the encumbrances on the property conveyed did not compel a finding by the trial court that there was consideration for the conveyances.

A review of the record convinces us that there was ample evidence to sustain all of the material findings and that said findings support the judgment entered.

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 4, 1944.