557 P.2d 190

Sue WALLIN and Walter Wallin, her husband, Appellants,

v.

The SCOTTSDALE PLUMBING COMPANY, INC., an Arizona Corporation, Appellee.

No. 1 CA–CIV 2840.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 5, 1976.

Rehearing Denied Nov. 9, 1976.

Petition for Review Denied Dec. 7, 1976.

Mariscal, Weeks, Lehman & McIntyre, P. A. by Donald N. McIntyre, Phoenix, for appellants.

Daughton, Feinstein & Wilson by Allen L. Feinstein, Phoenix, for appellee.

## OPINION

JACOBSON, Judge.

This appeal raises the issues of the sufficiency of the evidence to support a finding that a conveyance was fraudulent under A.R.S. § 44–1007, and the applicability of the statute of limitations to a fraudulent conveyance in a quiet title action.

These issues arose out of an action commenced by appellee, Scottsdale Plumbing Company (Scottsdale) against appellants Sue and Walter Wallin (Wallin) seeking to quiet title to 40 acres of land located near Tonapah, Arizona. The Wallins answered, setting up as an affirmative defense a deed to the property obtained from her brother, Andrew J. Evans, which Wallin claimed was prior in time and superior in right to Scottsdale's title. At the time of trial, Scottsdale introduced evidence that the deed under which Wallin claimed superior right was, as to Scottsdale, a fraudulent conveyance within the meaning of A.R.S. § 44–1007. Wallin countered this contention by claiming that if a conveyance was fraudulent, Scottsdale was barred by the statute of limitations from raising the issue. The issues of fraudulent conveyance and statute of limitations were not raised by the parties' pleadings. At the close of the evidence, the trial court allowed both parties to amend their respective pleadings to conform to the evidence

presented on these issues. The trial court entered judgment in favor of Scottsdale, quieting its title to the property against Wallin. Wallin has appealed.

The facts giving rise to this litigation are somewhat protracted. In July, 1964, the predecessor in interest of Scottsdale obtained a judgment against Andrew J. Evans and Mary Evans, his wife (Evans). On July 9, 1964, that judgment was recorded and became a lien on all of Evans' real property, including the 40-acre parcel which is the subject matter of this litigation.

Following the entry of that judgment, Evans apparently attempted to convey this property to others which resulted in another action being brought by Scottsdale's predecessor in interest under a new cause number to set aside these conveyances and to declare the judgment lien of July 9, 1964, valid. On April 20, 1965, the court entered judgment in that action, setting aside the purported conveyances and declaring the July 9, 1964, judgment lien valid. This judgment was also recorded.

Pursuant to a writ of execution and sheriff's sale issued in the original action against Evans, on December 20, 1965, Scottsdale's predecessor obtained a sheriff's deed to the subject property. This deed was recorded on December 22, 1965.

In the meantime, Evans appealed the judgment against him obtained in the original action and as a result of that appeal obtained a reversal of that judgment and a new trial. *Evans v. C & B Development Corporation*, 4 Ariz.App. 1, 417 P.2d 372 (1966). This opinion was rendered on July 29, 1966, and became final on October 25, 1966.

During the period between the obtaining of the sheriff's deed to this property (December 22, 1964) and the reversal of the judgment giving rise to that deed (October 25, 1966) Scottsdale's predecessor made mortgage payments on the subject property and paid real estate taxes. As a result of these payments, Scottsdale recorded a "No-tice and Claim of Lien" on December 5, 1966, in the amount of these payment expenses. Scottsdale then quit claimed the property back to Evans, subject to the "Notice and Claim of Lien". On December 20, 1967, Evans deeded the property to Wallin.

On remand after appeal, trial was held not only on the issue of indebtedness between Evans and Scottsdale's predecessor but also on the right to foreclose the "Notice and Claim of Lien" filed in December, 1966. Two judgments were entered in Scottsdale's favor and were duly recorded on May 3, 1968.

On December 1, 1971, Scottsdale caused an execution to issue on its May 3, 1968, judgment which resulted in a sheriff's deed again issuing on the subject property to Scottsdale and which was recorded on December 5, 1972. On March 9, 1973, Scottsdale instituted this action to quiet title.

The circumstances surrounding the transfer of the property in 1967 from Evans to Wallin, taken in the light most favorable to sustain the trial court are as follows. Mrs. Wallin did not recall the circumstances under which she received the deed from her brother. There were no discussions with her brother prior to receiving the deed. There were no written agreements, no escrow, and no title search. She did not pick out the property, was unaware of its value and did not know where the property was located. She did not prepare the deed and received it only after Evans had recorded it. After obtaining the deed, Evans continued to pay the taxes on the property. Mrs. Wallin testified the consideration for the transfer was various loans over a period of time made to her brother for which she received promissory notes. Although requested to do so, she never produced these notes. Likewise, the checks which represented these loans were not produced. In addition, it was shown that on the same date she received the deed to the subject property from her brother she also received a deed to the property from A.D.R. Development Company, a

corporation to whom her brother's earlier deed had been set aside in prior litigation. The deed from the corporation was signed by her brother, Evans, as president.

■ Wallin first contends that Scottsdale's failure to plead that the Evans deed was a fraudulent conveyance prohibits relief being granted by the trial court under this theory. We disagree. In addition to the trial court's allowing the parties to amend their pleadings to conform to the evidence, an amendment which would embrace the issue of the fraudulent nature of the transfer, *see Continental National Bank v. Evans,* 107 Ariz. 378, 489 P.2d 15 (1971), this issue was specifically raised by the pre-trial statement filed by the parties and signed by both counsel some three weeks prior to trial. Under such circumstances there can be no claim of surprise and the trial court properly considered this issue. *In re Estate of McCauley,* 101 Ariz. 8, 415 P.2d 431 (1966).

It is next contended that the evidence does not support a finding that the transfer from Evans to Wallin was in fact in fraud of creditors. In this regard, Scottsdale, both in the trial court and on appeal relies on A.R.S. § 44–1007, which provides:

"Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

In our opinion, the trial court under the evidence presented could have found actual intent to defraud creditors existing in both the grantor and grantee in this case.

■ On the grantor's part, Evans was aware prior to the transfer to his sister that the property transferred had previously been subject to execution for a debt which at the time of transfer was still unresolved. Moreover, attempted conveyances by Evans of this very property had previously been set aside. He was the moving party in effectuating the transfer and after the transfer continued to exer-

cise indicia of ownership (payment of taxes). He was at the time of transfer in severe financial difficulties. Under these circumstances, there were sufficient "badges of fraud", *Torosian v. Paulos,* 82 Ariz. 304, 313 P.2d 382, *modified,* 82 Ariz. 404, 313 P.2d 1120 (1957) to allow the trial court to conclude that Evans had an actual intent to "hinder, delay or defraud" creditors by the transfer of the property to his sister.

On Wallin's part, she was unaware of the value of the property or its whereabouts. Although she claimed that the transfer was in satisfaction of preexisting debts owed by her brother, her attempts to reconstruct those debts were less than satisfactory. She allowed her brother to deal with the property after its transfer as though he still owned it and there is evidence she had not even been on the property at the time of trial. In short, the "badges of fraud" as to her intent were that she also intended as grantee to "hinder, delay, or defraud" her brother's creditors.

■ We do not need to determine in this case whether in fact Wallin paid fair consideration for the property, for such consideration is immaterial if there was knowledge on the part of the grantee of the grantor's fraudulent intent and an intent on the part of the grantee to assist the grantor in his fraudulent purpose. *Knapp v. Elliott,* 81 Cal.App.2d 667, 184 P.2d 934 (1947).

We therefore hold that there was sufficient evidence to justify the trial court's finding that the deed from Evans to Wallin in 1967 was a fraudulent conveyance within the meaning of A.R.S. § 44–1007.

Wallin next contends that the three year statute of limitations for fraud, A.R.S. § 12–543 is applicable to fraudulent conveyances and since Scottsdale's action to quiet title was commenced more than three years after she received title in 1967, this issue was barred. This contention is premised upon three hypotheses: (1) that the issue

of fraudulent conveyances is controlled by the statute of limitations for fraud, A.R.S. § 12–543; (2) that in a quiet title action where the defense of a deed is set up, the statute of limitations would prohibit the showing that the deed was a fraudulent conveyance; and (3) that the statute of limitations starts to run as against a creditor at the time of the recordation of the deed sought to be challenged as a fraudulent conveyance. We need only deal with the second hypothesis to dispose of this issue.

Assuming A.R.S. § 12–543 is applicable, this statute provides in part that:

"There shall be commenced and prosecuted within three years after the cause of action accrues, and not afterward, the following actions:

\* \* \* \* \* \*

"3. *For relief* on the ground of fraud or mistake . . . ." (emphasis added)

We first note that the statute on its face is only applicable to the commencement of "actions for relief on the ground of fraud" and forbids such "actions" after the passage of three years. However, if the fraudulent character of the deed arises in some other way than in such an "action", there is nothing on the face of the statute that prevents it from being assailed for fraud.

With this observation in mind, A.R.S. § 44–1009 provides two remedies to a creditor where a conveyance is fraudulent as to him:

"1. Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

"2. Disregard the conveyance and attach or levy execution upon the property conveyed."

There is authority to the effect that if the creditor pursues the first remedy, the statute of limitations for fraud is applicable to his timeliness in bringing that action. *Babcock v. Tam*, 156 F.2d 116 (9th Cir. 1946).

However, Scottsdale in this case pursued its second remedy, that is, disregarded the conveyance, levied execution, purchased at sheriff's sale, obtained a sheriff's deed and then sued to quiet title. In such a case, the majority of courts holds that the statute of limitations applicable to fraud is simply not applicable in the quiet title action on the grounds that the suit to quiet title and remove clouds on that title are not "actions for relief on the ground of fraud."

This result was reached in *Puccetti v. Girola*, 63 Cal.App.2d 240, 146 P.2d 714 (1944), which bears a striking factual similarity to the instant case. In *Puccetti* the plaintiff purchased real property upon an execution sale and subsequently sought to have title quieted as to these purchases. The defendant was the grantee of a conveyance of the property upon which the judgment for the execution sale was based. The trial court found the conveyance to be fraudulent. On appeal, the defendant relied principally on the California statute of limitations for fraud which was three years. Rejecting the reliance upon this argument, the court stated as follows:

"Said action [plaintiff's quiet title cause of action] was primarily and essentially one brought by a creditor who was the purchaser at an execution sale to quiet his title to the property purchased by removing the clouds upon the title resulting from void deeds which had been made with an actual intent, on the part of the grantor and grantee, to defraud said creditor. Plaintiff's cause of action to quiet title did not accrue prior to the sale and the mere fact that the clouds had their inception in fraud did not render applicable the three year statute relating to actions for relief on the ground of fraud." 146 P.2d at 717.

*See also, Davidsen v. Salt Lake City*, 95 Utah 347, 81 P.2d 374 (1938). *Puccetti* quoted favorable from *Stewart v. Thomp-*

*son*, 32 Cal. 260 (Cal.1867) which elaborated on the underlying theory as follows:

"It is true that the clouds in question have their inception in fraud; but fraud is not a universal characteristic of the cause of action and cannot, therefore, be adopted as a test of the true nature of the action, when its position in the various categories presented by the Statute of Limitations comes to be considered . . . . The *gravamen* of the action is that the conveyances of which complaint is made, are clouds upon the title, and for that reason, and that only, their cancellation is asked. The right of the plaintiff to his relief does not depend altogether upon the question whether they are tainted with fraud, but upon the fact that they are clouds. Conveyances not tainted with fraud may cloud the true title. Hence fraud is a false quantity when we come to assign an action of this character to its proper class under the Statute of Limitations. If fraud exists, it does so merely as a feature in the case and not as a test of the true nature of the cause of action within the meaning of the statute." 32 Cal. at 263.

*Accord, Jackson v. Plyler*, 38 S.C. 496, 17 S.E. 255 (1893); *Cox v. Watkins*, 149 Kan. 209, 87 P.2d 243 (1939); *Richardson v. Michel*, 45 Cal.App.2d 188, 113 P.2d 916 (1941); *Lotspeich v. Dean*, 53 N.M. 488, 211 P.2d 979 (1949); *Prince Hall Lodge v. Universal Lodge*, 62 Wash.2d 28, 381 P.2d 130, *cert. denied*, 375 U.S. 945, 84 S.Ct. 352, 11 L.Ed.2d 275 (1963). *See also, Alsdorf v. Hampton*, 33 Ariz. 506, 266 P. 16 (1928).

■ In our opinion, these cases, based upon the language of our statute, are persuasive, and we therefore hold that the statute of limitations applicable to fraud (A.R.S. § 12–543) is not applicable in a quiet title action to bar proof as to the fraudulent nature of a conveyance which is a cloud on that title.

Since we have held that the statute of limitations does not bar Scottsdale from proving the fraudulent character of the transfer from *Evans* to *Wallin* in its quiet title action, we do not need to determine when such a bar might accrue. Likewise, we do not need to reach the effect of the "Notice of Claim and Lien" urged by Scottsdale in support of the trial court's judgment in its favor.

The judgment of the trial court is affirmed.

SCHROEDER, P. J., and WREN, J., concurring.