[Civ. No. 3442.   Fourth Dist.   Oct. 2, 1947.]

JUNE KNAPP, Appellant, v. JESSE L. ELLIOTT, as Sheriff, etc., et al., Respondents.

668

John N. Helmick, Preston Turner and Oliver O. Clark for Appellant.

Alexander L. Oster and Marion P. Betty for Respondents.

GRIFFIN, J.—June Knapp, plaintiff and appellant, filed this action on November 25, 1942, against the sheriff of Orange County and sought to enjoin him from selling certain real property under execution. Maurice Rose and others were named defendants. Rose was an assignee of a judgment for $3,000, plus interest and costs, obtained by L. H. Betty

in Los Angeles County against Ellen B. Crowder, plaintiff's mother-in-law, and one E. W. Knapp, plaintiff's husband.

Defendant Rose, in his answer, alleged that the real property (Parcels 1 and 2) levied upon, were standing in the name of plaintiff June Knapp; that Parcel 1 was transferred to her by Mrs. Crowder, through E. W. Knapp, her attorney in fact, without consideration, and with intent to defraud the creditors of Mrs. Crowder; that this and other similar transfers rendered Mrs. Crowder insolvent.

By consent, the complaint was later amended to seek, in addition to an injunction, to have plaintiff's title quieted against all defendants as to both Parcels 1 and 2.

Defendant Rose further answered and specifically set forth his claimed interest by virtue of his judgment and levy and asked that it be adjudged that he has a judgment and execution lien on the property, free of any interest of plaintiff and that it be established that plaintiff is a *trustee* of said property for Mrs. Crowder and E. W. Knapp, and that the sheriff be permitted to proceed with the sale.

The trial court found that as to Parcel 2 (property deeded to plaintiff from the Orange County Building & Loan Association subsequent to 1929), plaintiff was the legal and rightful owner, but as to Parcel 1, it was found that that parcel was transferred to plaintiff by Mrs. Crowder in 1929, to avoid payment of an anticipated judgment in an action then pending against her in Los Angeles County; that the transfer was without consideration and made for the purpose of making the grantor insolvent, and that a deed was accepted by plaintiff with that knowledge and with intent to defraud defendant Rose's assignor, L. H. Betty, a creditor, who was plaintiff in the action then pending; that at the time of the levy of the execution herein mentioned, title to Parcel 1 was vested in Mrs. Crowder, although the record title appeared to be in plaintiff; that plaintiff had no title or interest therein; that plaintiff was and is holding said property as *trustee;* and that the defendant Rose had a valid execution lien on said Parcel 1. It dissolved the restraining order as to that parcel and held that plaintiff had not established her title to that parcel *by adverse possession;* that Rose's right to attack the conveyance from Crowder to plaintiff is not barred by the statute of limitations and that such a statute cannot be invoked by plaintiff *as trustee* against the beneficiary, de-

fendant Rose, and that Rose and his predecessors in interest are not guilty of laches, as claimed. Judgment was entered accordingly.

■ It is first contended that there is no contradiction of plaintiff's testimony as to the manner in which she acquired the property and the consideration given for it; that therefore the evidence is insufficient to support the finding in this respect.

In *Fitz-Patrick* v. *Osborne*, 57 Cal.App.2d 226 [134 P.2d 297], it was stated that where the trial court had some misgivings as to the truth of the testimony of appellant the trial judge was not bound to believe his testimony and that it did not follow that because no other witness testified to the contrary his testimony remained unrefuted. In this connection it was held that the relationship of the parties, together with the other circumstances surrounding and incident to the transactions, constituted evidence which of itself warranted inferences in direct conflict with the testimony of the appellant and that the court may properly take such evidence into account where the testimony is inherently improbable. See, also, *Adams* v. *Bell*, 5 Cal.2d 697, 702 [56 P.2d 208], where the chief witnesses for the plaintiff were defendants called under section 2055 of the Code of Civil Procedure. They testified to a consideration growing out of an agreement between them whereby one defendant had improved the property in return for his mother's promise to deed it to him. It was held that the trial court was privileged to discredit that testimony.

From the transcript of the testimony it appears that on May 3, 1929, during the trial of the action (*Betty* v. *Crowder and Knapp*), Mrs. Crowder deeded to her daughter-in-law, June Knapp, about 47 parcels of property in Los Angeles County. At the same time, she deeded the property here in question to her. These deeds were acknowledged before her then attorney, acting as notary public. The deeds were recorded September 7, 1929. Later, an action was filed in Los Angeles County, between these same parties, to set aside the Los Angeles County deed on the grounds that the conveyance was fraudulent and made for the purpose of hindering and delaying the creditor, Maurice Rose. After the trial, according to the judgment roll, that conveyance was set aside. The Los Angeles County property consisted of flats, rental

residences, and vacant property, and was heavily burdened with delinquent taxes as well as mortgages.

Plaintiff testified that she had some sort of an oral agreement with her mother-in-law to take over those properties and assume the burden of paying the taxes, etc., to maintain the household and help support and care for a granddaughter as consideration for their purchase price. No internal revenue stamps were attached to either deed. Some of the Los Angeles County property was levied upon and sold under the execution, which only partially satisfied the judgment. At that time, Parcel 1 (in Newport Beach) had been sold to the state for taxes and was not assessed to plaintiff on the records. Plaintiff has negotiated for redemption under the 10-year plan. That property consisted of eight one-room bungalow courts and a three-room cottage.

Plaintiff then testified that she agreed to purchase Parcel 1 in 1925; that she gave Mrs. Crowder about $600 in cash in three separate payments prior to the time she executed the deed to her; that she agreed to assume the taxes and assessments and upkeep of the property; that there were about $700 in delinquent taxes due; that she estimated its value at approximately $2,700 to $3,000 when she orally agreed to purchase it.

She further testified that part of the consideration for the purchase price was the value of her personal services in helping to manage it, in conjunction with Mrs. Crowder, during the summer seasons and over a period of approximately five or six years prior to the agreement to purchase it; that the agreement was that she was to have one-third of the net income, which would approximate $150 per summer season of four months. She then testified that at the time she was married to E. W. Knapp (1920) she had about $750 in the bank, which she had saved from her employment at $35 per week; that all of the money she paid to Mrs. Crowder on the purchase price of the property was from her "separate funds"; that since that time she has paid all back taxes and has expended over $3,500 by way of repairs and improvements to the court, $2,000 in new furnishings; that the reasonable value of the property on October 22, 1942, the date of the levy, was $9,500; that its present value is $12,500; that the net income from rentals prior to 1941 for the three summer months was about $600; and that since 1941, that

income doubled by reason of all-year rentals. She then said that she never asked Mrs. Crowder for any pay for her services in managing the property because she knew she "would get it sometime"; that she would "give me something or compensate me in some way for my efforts."

She was asked in her deposition, in reference to the income from the bungalow courts: "Q. What was done with the money that came from the place? A. I don't know, I wouldn't be able to say just now. Part of it was supposed to be mine, but I didn't get that because I guess it took it to take care of the place as far as I know."

She then produced a witness who testified that plaintiff had been in possession and had occupied the courts since 1935. A real estate appraiser testified that in 1925 the property was worth about $1,400; in 1942, by reason of the improvements placed thereon, $10,000; and that in 1944 it was worth $15,000.

The record throughout shows an attitude of plaintiff to be evasive and uncertain in her answers and in many instances they were contradictory and improbable. The savings account containing plaintiff's "separate earnings" appears to have been quite "elastic" considering the withdrawals claimed to have been made from it. The claimed annual income from Parcel No. 1 would not coincide with the claimed expenditures made for improvements and for payment of delinquent and current taxes on the property.

The trial judge indicated the difficulty he encountered with the witness during her testimony when he said: "It seems to the court that a person involved in litigation of this kind should have a better recollection than this witness. . . . The witness has had plenty of time to think about this, it does seem to me. I don't think the witness is evasive, I don't want to say that, but it is remarkable that her memory is not better that it is on some of these matters."

The execution of the deed to plaintiff of Parcel 1 from her mother-in-law, Mrs. Crowder, executed by plaintiff's husband, as the mother-in-law's attorney in fact, during the trial of the action in which the judgment against Mrs. Crowder and her son was anticipated and making her insolvent, is strong evidence supporting the trial court's finding. The inference of fraud was reasonable. (*Chichester* v. *Mason*, 43 Cal.App.2d 577 [111 P.2d 362]; Civ. Code, § 3439.04; *First*

*National Bank* v. *Shipley,* 109 Cal.App. 194 [292 P. 996].)
■ A deed, even though supported by a consideration, may be set aside as fraudulent where there was knowledge on the part of the grantee of the fraudulent intent on the part of the grantor, and an intent on the grantee's part to assist the grantor in a fraudulent purpose and to hold the land as a secret trust for her. (*Chichester* v. *Mason, supra.*) ■ The question of fraudulent intent was a question of fact to be determined by the trial court. (*Fross* v. *Wotton,* 3 Cal.2d 384 [44 P.2d 350]; *Abbey* v. *Zimmerman,* 12 Cal.App.2d 311 [55 P.2d 903].)

In *First National Bank* v. *Shipley, supra,* it was held that questions of fraudulent intent and of adequacy of consideration are questions of fact, calling for the exercise of judicial discretion, and upon appeal every reasonable presumption must be indulged in favor of the action of the trial court, and that even though the only oral testimony at the trial, aside from testimony as to the value of said estate and the portion distributed, was given by defendant and his wife, the trial court was not bound to believe their testimony on the questions of fraudulent intent and lack of consideration. In this respect, and under such interpretation, the evidence produced and the inferences deducible therefrom support the findings and conclusions reached by the trial judge.

■ It is next argued that, notwithstanding that finding, the evidence conclusively shows that plaintiff gained title to Parcel 1 by *adverse possession* for over five years, and has complied with all the requirements constituting the necessary elements of adverse possession, under sections 318, 319, 321, 322 and 323 of the Code of Civil Procedure.

*Puccetti* v. *Girola,* 63 Cal.App.2d 240 [146 P. 2d 714], is factually similar to the instant case and seems to dispose of this contention. It is there stated, at page 248, which adopts the concurring opinion in *Stewart* v. *Thompson,* 32 Cal. 260, 265:

" 'As to the creditor, the fraudulent conveyance was void. Notwithstanding this conveyance, therefore, so far as the rights of the creditor are concerned, the title never passed to the grantee of the debtor until the sale under execution and the making of the sheriff's deed under which the plaintiff claims. Until that time as to the creditor, the title must be regarded as remaining in the debtor; and his grantee,

who participated in the fraud, must be regarded as being in possession with the debtor's assent, and not adversely to the creditor, his right being subject to be divested by a sale under execution against his grantor in favor of the creditor defrauded.' ''

This reasoning was approved in *Scholle* v. *Finnell*, 166 Cal. 546 [137 P. 241]; and *Bird* v. *Murphy*, 72 Cal.App. 39 [236 P. 154].

█ There is an additional contention that defendant Rose is barred from now levying upon Parcel 1 in the enforcement of a judgment obtained in 1929, by reason of laches. There is a conflict in the evidence as to when defendant Rose first acquired actual knowledge that Mrs. Crowder did own and had conveyed the premises to plaintiff. The conveyance was made and recorded in 1929. Defendant Rose claims in his answer that he did not discover until August, 1942, that such a conveyance had been made, and that immediately thereafter he caused an alias writ of execution to issue. There is no proof of this alleged fact. However, title, for 10 years hence, was in the State of California by reason of a delinquent tax sale, and the property was being redeemed under the 10-year plan of redemption. That property was not assessed to plaintiff on the assessment rolls until the year 1940. Defendant Rose claims also in his answer that from 1932 to 1940, he caused an examination of the records of the Orange County assessor's office to be made and found no real property assessed to plaintiff. There is no proof of this claimed fact. There is evidence that defendant Rose brought Mrs. Crowder into court on a supplemental proceeding and did make some substantial showing, indicating that he was endeavoring to discover property standing in her name. While the evidence might well have supported a contrary finding, the question of laches was a question of fact to be determined by the trial court. No abuse of discretion appears in this respect. (*Richardson* v. *Michel*, 45 Cal.App.2d 188 [113 P.2d 916].)

█ It is next argued that defendant's claim that the deed was fraudulently executed is barred by section 338, subdivision 4, of the Code of Civil Procedure. Defendant, in his amended answer, by way of defense, recites the transfer of the property to plaintiff in May, 1929, but alleges that said transfer was without consideration and was with intent to defraud him as a creditor and was accordingly "void." The

prayer of the answer was that by reason thereof it should be decreed that plaintiff "has no interest in the property" except "*as trustee.*"

It was held in *Puccetti* v. *Girola, supra,* that section 338, subdivision 4, *supra,* does not bar an action to quiet title against a fraudulent grantee by the grantor's creditor who purchased the property at an execution sale more than three years after the fraudulent transfer, as a creditor's cause of action does not accrue prior to the sale, and as the mere fact that the clouds of title had their inception in fraud did not render the statute applicable.

*Richardson* v. *Michel, supra,* page 196, clearly sets forth the general rule stated in 12 California Jurisprudence, page 1029, and approved in *Pedro* v. *Soares,* 18 Cal.App.2d 600 [64 P.2d 776], in reference to the election of one of three remedies by which a creditor may reach property fraudulently transferred, namely:

" ' . . . (1) *having obtained a judgment* upon his claim he may levy upon the property fraudulently conveyed, since the conveyance, so far as he is concerned, leaves the legal title and ownership in the fraudulent grantor; or, (2) he may bring an action in equity to set aside the fraudulent conveyance and subject the property to the satisfaction of his judgment lien, in which case the action is not one on the judgment but is an equitable one for relief against the obstruction caused by the fraudulent transfer which hinders him in satisfying his claim by the ordinary process of law; or, (3) he may bring an action in the nature of a creditor's bill for the purpose of subjecting to the payment of his judgment, the money or property transferred or concealed in fraud of his rights.' "

As to the second remedy, it has been held that the three-year statute of limitations, section 338, subdivision 4, does apply to an ordinary action (prior to the sale under execution) to set aside a deed on grounds of fraud, and that ordinarily such a cause of action would accrue on the date of judgment, but that if the creditor did not know about the fraudulent conveyance, the cause (in the absence of laches) would not arise until he discovered the fraud by which his rights had been invaded. Although defendant in this action pleaded the necessary facts pertaining to the time of discovery to bring this claimed defense within such a statute, his proof fell far short of establishing those facts.

This action, originally, was but an action against the sheriff to restrain the sale. The sheriff had the right to act upon the defense here alleged in defense of his action. (*Thornburgh* v. *Hand*, 7 Cal. 554.) Defendant obtained an alias execution, even though the title to the property stood in the name of plaintiff. Had his efforts not been intercepted by plaintiff, only such interest as Mrs. Crowder may have had in the property would have been sold under the execution sale.

Under the decision of *Alhambra Building & Loan Assn.* v. *DeCelle*, 47 Cal.App.2d 409 [118 P.2d 19], (Hearing denied by the Supreme Court), a different rule seems to prevail in an action to set aside a conveyance of land allegedly transferred to defraud a creditor, even though instituted *more than three years after the date of the conveyance*, where it was claimed by the creditor that the grantee acquired a *mere naked title* and held the property *in trust* for the judgment debtor. It was there stated that under such circumstances the judgment debtor was the beneficial owner of the property and that title simply rested in the other party for her benefit.

Applying this rule to the pleadings, the facts found, and the judgment entered in the instant case, the trial court's conclusion that the three-year statute of limitations was not applicable finds legal support.

By plaintiff's complaint, as amended, she sought to quiet title to the property and to enjoin the sale. The amended answer denied her title, alleged that plaintiff "holds the property mentioned . . . *as trustee* . . . of . . . Ellen B. Crowder, the judgment debtor. . . ." The prayer is that plaintiff be declared such *a trustee*. The court so found and rendered judgment accordingly. We are unable to discern therefrom any legal or factual distinction that would permit us to hold that section 338, subdivision 4 of the Code of Civil Procedure, had application to this nature of a proceeding. (See, also, *Nevada Irrigation District* v. *Jones*, 69 Cal.App.2d 262 [158 P.2d 973] ; and *Bird* v. *Murphy, supra*.)

No question is here presented as to any claimed abuse of discretion of the trial court, under section 685 of the Code of Civil Procedure, in allowing the issuance of the execution after five years from the date of entry of the judgment. In *Welk* v. *Conner*, 102 Cal.App. 286, 287 [282 P. 963], it was held that a "*mere lapse*" of 13 years from the entry of the

judgment does not deprive the trial court of the power to order issuance of execution.

Judgment affirmed.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing was denied October 29, 1947, and appellant's petition for a hearing by the Supreme Court was denied November 24, 1947.