[Civ. No. 16474. Second Dist., Div. Three. Mar. 10, 1949.]

MILDRED BEADLE, Appellant, v. JESSIE NORTHRUP, Respondent.

F. D. R. Moote and Lloyd E. Keiser for Appellant.

Maurice Gordon for Respondent.

SHINN, P. J.—In June, 1942, Jessie Northrup brought suit against John and Susan Wight for $2,500. On February 9, 1943, the day the trial commenced, Wight and his wife executed a note for $7,600 in favor of their daughter, Mildred Beadle, and a mortgage securing the note on a five-unit residential property in Whittier. Mrs. Northrup recovered judgment of some $2,900, and in 1945 purchased the property at execution sale. Mrs. Beadle brought the present action to foreclose the mortgage, Mrs. Northrup answered and filed a cross-complaint alleging that the note and mortgage had been given without consideration and with the mutual purpose of the Wights and Mrs. Beadle to hinder, delay and defraud the

creditors of the mortgagors. After a protracted trial the court determined the issues of want of consideration and fraud in favor of Mrs. Northrup and rendered judgment declaring the note and mortgage invalid. Mrs. Beadle appeals.

John Wight, Mildred Beadle and her husband A. L. Beadle, testified that the consideration for the mortgage was an antecedent indebtedness of Wight to Mr. and Mrs. Beadle consisting of the following: Loans amounting to $600 made by Mrs. Beadle to her father during the years 1936-39; $700 loaned to him in October, 1939; $950 owing for Mrs. Beadle's services in caring for the mortgaged property over a three-year period; $800 expended for upkeep and repairs of the property; $982 owing for automobiles purchased from A. L. Beadle; $2,200 for gasoline, oil, tires and auto repairs, and the remainder, interest on the indebtedness. Except for a single memorandum relating to the purchase of an automobile from A. L. Beadle, the testimony of the three witnesses was not corroborated by any written agreement, book of account, statement, check, receipt or any other writing, nor by the testimony of any disinterested witness.

The problem of the trial court was to determine the degree of credibility of plaintiff's witnesses and the weight that should be given to their testimony. The fact that they were not contradicted by the other witnesses did not establish the truth of their testimony. (*Davis* v. *Judson*, 159 Cal. 121, 128 [113 P. 147]; *Knapp* v. *Elliott*, 81 Cal.App.2d 667 [184 P.2d 934]; 27 Cal.Jur. § 156, p. 184; 8 A.L.R. 796.) The contention that there was insufficient reason for disbelieving the three witnesses is essentially a claim that the court acted arbitrarily and unreasonably or, stated otherwise, that the testimony was so logical, so consistent and straightforward as to remove all reasonable doubt as to its truthfulness. It requires no extended analysis of the 1,100 pages of transcript to answer this contention. A brief summary will suffice.

The property in question was subject to a $10,000 balance of a first trust deed and a second trust deed of $3,500 in favor of Mollie Luke Freeman, given in June, 1939. There was evidence that the property was worth only $12,500. Mrs. Beadle and her husband, A. L. Beadle, had come to Whittier in December, 1935, when she was only 19 years of age, to take over a rented garage which Wight was operating with one Thomas, under the name of Quaker City Motor Company. Mr. and Mrs. Beadle testified that they then had $2,000 or $2,500. Mr. Beadle testified that his wife deposited this money

in a postal savings account. Mrs. Beadle testified that she kept the money around the house and deposited none of it. There was no other evidence that they possessed any such sum of money. Mrs. Beadle also testified that in October, 1939, she received $700 as an inheritance, that she cashed a check for this amount and loaned the money to her father. It appeared from a photostat of the check that it had been cashed October 19th and it was proved by the postal savings records that on the same day Mrs. Beadle opened a savings account with a deposit of $500, that the account was maintained for several years, infrequent deposits and withdrawals were made and the balance never exceeded $500. These circumstances were sufficient to cast serious doubt upon the alleged $700 loan transaction. The $600 which Mrs. Beadle testified had been previously loaned to her father in the years 1936-8 was made up of numerous small sums advanced to him in cash. No record of the amounts or dates of these loans was produced. There was no evidence that Mr. Beadle had prospered in his business or that he and his wife were able to finance her father to the amount of five or six thousand dollars. The claimed indebtedness of $800 for repairs and upkeep of the property was explained by Mrs. Beadle. She and her husband were living in one of the units and she was managing the property. When repairs or improvements were needed she had them made and paid for them from her own funds. She did not explain what she had done with the rents she collected nor did she produce any corroborating evidence relating to the alleged expenditures. She testified that she had had a book account of the items but had destroyed it shortly after the mortgage was given. The claim that she was to be paid $25 per month, in addition to free rent, for managing the property rested upon her own testimony and that of her husband and her father. The evidence furnished no reason for believing that her services were worth more than the rental value of her apartment.

The remaining items are the $982 claimed to be the purchase price of several automobiles and $2,200 claimed for gas, oil and tires sold Wight, and charges for auto repairs. When Wight gave his deposition he listed seven cars and a trailer as having been purchased from Beadle, with their several purchase prices which totaled $5,800, and testified that he had made the purchases and still owed the money. Mr. Beadle testified that the item of $982 consisted of three sums charged Wight for two cars and a trailer, and that he had made up

514

the account from memory. Mr. Wight then changed his testimony to conform to that of Beadle. A single memorandum was produced showing a sale of a car for $510 with a notation that "Dad" owed $252.55. It appeared that Beadle kept account books of his business but that they also had been destroyed in 1943. The testimony respecting charges for gas, oil, tires and repairs was extremely vague. Wight testified that when he gave his deposition he had forgotten this claim entirely. During the years in question Beadle maintained a small bank account. It was relatively inactive, seldom showed a balance of more than $200, and frequently stood below $100. Wight testified with reference to the cars he had acquired that Beadle had purchased them second hand, had then obtained from finance companies as much in loans as he had paid for them, had sold them to him, Wight, subject to the liens of the finance companies, and stood to lose nothing if they were never paid for. Beadle also testified that the cars were financed in this manner, although he did not admit that the financing covered the full purchase price of the cars.

There were many discrepancies and contradictions in the testimony of the principal witnesses. Even on the printed record, without the advantage of observing the witnesses, which the trial court had, we find the evidence respecting the claimed indebtedness far from satisfactory. The fact that all the alleged agreements were oral, the absence of checks, records or writings of any sort respecting any of the claims, the destruction of such records as Mr. and Mrs. Beadle may have had and the lack of corroborating testimony of any disinterested witness, were all circumstances which tended to instill doubt as to the validity of the claims. Although the testimony of the parties to the mortgage was not directly contradicted except in a few particulars, the issue depended upon the trial court's appraisal of its credibility. The record furnishes no basis whatever for disturbing the conclusion that the mortgage was not given in consideration of an antecedent indebtedness.

The court also found that the execution of the note and mortgage in favor of Mrs. Beadle rendered Mr. and Mrs. Wight insolvent. It is contended that this finding is not supported by the evidence. It is a material finding for the reason that if they were thereby rendered insolvent or were already insolvent, the note and mortgage were fraudulent unless they were given for a fair consideration. (Civ. Code, §§ 3439.03, 3439.04.)

Wight testified that at the time he gave his daughter the note and mortgage he was of the opinion that there was an equity in the property above the first and second encumbrances, although a small one. But it is immaterial whether the mortgage had a substantial value, inasmuch as Mr. and Mrs. Wight obligated themselves to pay their daughter $7,600 in satisfaction of the claimed indebtedness. If the bona fide antecedent indebtedness was disproportionately small, as compared with the obligation of Mr. and Mrs. Wight to pay their daughter $7,600, it would not have been a fair consideration as that term is defined in section 3439.03. Since there was no consideration, it results that the note and the mortgage were given with a presumed intent to hinder, delay and defraud creditors, if Mr. and Mrs. Wight at that time were insolvent or were rendered insolvent. The evidence was sufficient to prove that they were rendered insolvent, if indeed they were not already insolvent. Aside from the Whittier property, Wight owned a 40-acre parcel in San Diego County, encumbered to its full value. He also owned stock in a Nevada corporation and a Montana corporation, both of which held oil and gas leases, either undeveloped or nonproducing. He placed a value of $40,000 on his stock in one of the corporations, and $50,000 on the other, and he mentioned some equities in land upon which he did not place a value. He testified in his deposition that on February 9, 1943, he was in debt to the extent of $200,000. He corrected this to read, "less than $50,000." Elsewhere he testified without correction that he had no way of knowing without checking, but he would say that he owed something over $100,000. In view of the highly unsatisfactory testimony as to the extent of his liabilities and in making allowance for optimism and self-interest in the appraisal of his assets, the court was justified in reaching the conclusion that Mr. and Mrs. Wight were not solvent after they had executed the note and mortgage to their daughter. This state of insolvency and the absence of a fair consideration rendered the note and mortgage fraudulent as against creditors. (See *Hanscome-James-Winship* v. *Ainger,* 71 Cal. App. 735 [236 P. 325] ; *Allee* v. *Shay,* 92 Cal.App. 749 [268 P. 962].)

The judgment rests also upon a finding of an actual intent to defraud, as distinguished from an intent which is presumed in law from the state of insolvency and the want of a fair consideration for the obligation. There was in our opinion sufficient evidence to support the finding that the parties

to the mortgage had a mutual intent and purpose to hinder, delay and defraud the creditors of Mr. and Mrs. Wight. If it was given without consideration, the obvious purpose was to place a lien on the property that would be held by Mrs. Beadle for the use and benefit of her father and subject to his control. Whatever equity there was in the property would have been converted into an encumbrance superior to the lien of any judgment Mrs. Northrup might secure. Mrs. Beadle and her father testified that Mrs. Northrup's claim was not mentioned until some time after she had secured judgment, and that the note and mortgage were given to replace earlier ones for $6,400 given Mrs. Beadle in 1939. The testimony as to the consideration for the later mortgage related also to the earlier one. It consisted of the same alleged indebtedness, which was raised to $7,600 by the addition of interest and items alleged to have originated after the date of the first mortgage. The testimony relating to the earlier transaction was vague. Mrs. Beadle testified that she was given the note but that her father had kept possession of the mortgage. No such mortgage was of record and it was claimed that both the note and the mortgage had been lost. The finding that there was no consideration for the 1943 mortgage would apply also to the one alleged to have been given in 1939. We must assume that the court did not believe there had been a bona fide mortgage transaction in 1939, or that Mrs. Beadle was ignorant of the existence of Mrs. Northrup's suit which was going to trial the day the 1943 mortgage was given. Additional circumstances tending to show that no bona fide mortgage was given, either in 1939 or 1943, were the following: Although Wight testified that he had executed the 1939 mortgage, before the execution of the mortgage to Mrs. Freeman, he negotiated the Freeman note and mortgage to Pepperdine, representing it to be a second encumbrance, and later, after the date of the 1943 mortgage, he obligated himself in writing to Mrs. Gerry to procure the release of the property from the liens of both the Freeman trust deed and the Beadle mortgage. Wight testified he had been confident that his daughter would accept other security to replace her mortgage, although he had not discussed the matter with her. A reasonable inference would have been that there was an understanding that the mortgage was to be released upon Wight's request. The finding that the mortgage was given with a mutual purpose to hinder, delay and defraud creditors of the mortgagors is supported by the evidence and this finding alone is sufficient to support

the judgment. (*Vogel* v. *Sheridan*, 4 Cal.App.2d 298 [40 P.2d 946]; *Fross* v. *Wotton*, 3 Cal.2d 384 [44 P.2d 350].)

We have considered the further claim that the court erred in permitting the examination of Mrs. Gerry respecting her negotiations with Wight for the transfer of the Whittier property to her, and find it to be without merit. Neither was there abuse of discretion in denying plaintiff's motion for new trial on the ground of newly discovered evidence.

Upon the oral argument counsel recently employed by appellant advanced new theories of defense. The argument was made that because Mrs. Northrup purchased the property at execution sale she was precluded from questioning the validity of the Beadle mortgage. It was also contended that Wight would be estopped from attacking the mortgage, because of the fraud of himself and Mrs. Beadle, and that plaintiff as his successor would likewise be estopped; that the facts were fully stated in Mrs. Northrup's cross-complaint and that it stated no cause of action for relief by way of cross-complaint.

It is well settled that points first raised in the closing brief of the appellant will not be considered unless required in the interest of justice, or unless meritorious cause is shown for the failure to raise them in the opening brief. (*Bank of America etc. Assn.* v. *Gandolfo*, 5 Cal.App.2d 704 [43 P.2d 341]; *Truelsen* v. *Nelson*, 42 Cal.App.2d 750, 755 [109 P.2d 996]; *Puccetti* v. *Girola*, 63 Cal.App.2d 240, 249 [146 P.2d 714].) No such exceptional circumstances are presented here. We are not satisfied that the points do not involve factual considerations that should have been presented to the trial court and which might have been decided in plaintiff's favor. The cause has been tried on the merits and justly decided, and the defenses now urged do not go to the jurisdiction of the trial court. We are well persuaded that the points mentioned should not be given further consideration.

The judgment is affirmed.

Wood, J., and Vallée, J., concurred.

A petition for a rehearing was denied April 6, 1949, and appellant's petition for a hearing by the Supreme Court was denied May 5, 1949.