[Civ. No. 17750. Second Dist., Div. One. Feb. 21, 1951.]

THEORA A. GERRY, Appellant, v. JESSIE NORTHRUP, Respondent.

Guthrie, Darling & Shattuck for Appellant.

Maurice Gordon for Respondent.

HANSON, J. pro tem. — The only question presented is whether the trial court, in the exercise of its equitable jurisdiction, erred in its refusal to permit the title owner of a realty to redeem, something over a year after the statutory right of redemption had expired, the property sold on execution sale to a judgment creditor.

Appellant first contends that the court exercised its equitable jurisdiction erroneously, because the judgment creditor in bidding at sale of the property was aware of the fact that two liens thereon (one a mortgage, the other a trust deed) were invalid, whereas appellant lacked such knowledge and as a consequence failed to redeem the property within a year after its sale. In short, appellant's contention is that she would have redeemed the property had she known what the judgment creditor knew, but for want of that knowledge she did not redeem because the two liens thereon, subsequently determined by the courts to be invalid, taken together with the valid lien exceeded the value of the property. This mistake on appellant's part is not attributed to any false representations by or fraud on the part of respondent, but merely as a fact which should have required the court to rule in appellant's favor. We fail to see the logic of appellant's argument.

Another contention of appellant is that when a judgment creditor levies on real estate and causes a sale thereof and becomes the purchaser he takes title subject to all prior liens of record and may not challenge their validity.

The record in this case discloses that this is one of a series of three cases which have reached this court (*Cf. Beadle* v. *Northrup,* 90 Cal.App.2d 510 [203 P.2d 552]; *Northrup* v. *Security Title Ins. & Guar. Co.,* 90 Cal.App.2d 518 [203 P.2d 557]) involving the rights of these and other parties to a five-unit apartment house located in Whittier.

Sometime prior to June 24, 1939, John Wight and his then wife, Susan acquired the property mentioned subject to a first trust deed placed on the property in 1929 by its then owner. On June 24, 1939, the Wights executed a second trust deed to the property to secure a note of $3,500 in which the beneficiary and payee of the note was the wife of one Lincoln A. Freeman. After it was duly recorded Mrs. Freeman transferred her interest in the note and trust deed to one Pepperdine as collateral security to a note held by Pepperdine executed by Mr. Wight and her husband Mr. Freeman. These two men at that time and subsequently thereto were jointly engaged in dealing in oil royalties and oil leases in the state of Montana.

In 1942 the respondent herein instituted an action against John Wight and his wife which went to trial on February 9, 1943, and resulted in a money judgment a few days later in favor of the respondent. On the day that case went to trial

John Wight and his wife Susan executed a mortgage in the principal sum of $7,600 upon the property here involved to their daughter, Mrs. Mildred Beadle. The mortgage was recorded on the day following, and hence antedated of record the later judgment lien of respondent.

On June 25, 1945, John Wight and his then wife Susan conveyed the property here involved to appellant Theora A. Gerry (the present wife of John Wight). The deed was made subject only to the unpaid balance of the first trust deed which at the time amounted to a little less than $6,000. It is the testimony of appellant that Wight at the time of the conveyance orally agreed he would clear the property of the other encumbrances, i. e., the second trust deed, the mortgage to his daughter, and respondent's judgment lien which together aggregated approximately the sum of $14,000. She also testified that the consideration she paid to Wight for his equity was $5,800, but the court found she paid no consideration whatsoever. This finding of the court is not here challenged.

Sometime prior to November 5, 1945, respondent caused execution to issue and the property here involved was sold on that date by the sheriff to the respondent for the sum of $3,458.96. No redemption having been made on or prior to November 5, 1946, the sheriff on November 13, 1946, issued his deed to respondent.

On September 1, 1945, prior to the execution sale on November 5, 1945, Wight advised appellant, according to her testimony, that he would be unable to clear her property of the second, third, and fourth liens thereon as he had agreed to do; that he then told her he would loan her the $5,800 he had received from her for the property so that she, with additional financial assistance from his lawyer, could purchase the first trust deed and foreclose it and thereby eliminate the subsequent liens. Pursuant to the suggestion thus made the first trust deed was acquired by appellant and Wight's lawyer Kaye in the name however of a third person. Thereupon proceedings of foreclosure of that first trust deed were commenced, but at the instance of respondent were enjoined to await court decisions as to validity of the mortgage and the second trust deed.

Appellant, aside from her contention that the court should have granted her the right to redeem for want of her knowledge as to the invalidity of the liens mentioned, also contends that the respondent judgment creditor purchased the prop-

erty subject to all prior liens of record and hence legally could not challenge their validity. Upon the latter premise appellant argues that, but for the wrongful challenge, she would not have been enjoined from selling the property under the first trust deed. If she had not been enjoined, so runs the argument, she could have sold the property free of the inferior liens, and that without any determination of the invalidity of the liens of the mortgage and second trust deed, the respondent would not have redeemed. This for the reason that such liens plus that of the lien of the first trust deed exceeded the value of the property. Hence, she contends, equitable redemption should now be accorded to her. While we see no merit whatever to the argument, we think we should discuss briefly the basic fallacy which underlies it.

When the defendant Jessie Northrup obtained her money judgment against John and Susan Wight several procedures looking toward its satisfaction were open to her. If she was of the opinion, or had knowledge, that her debtor owned land in Los Angeles County or had conveyed land therein by deed, mortgage, trust deed or otherwise to defraud creditors, she was entitled to have execution issue and cause it to be levied on such land and thereby obtain a lien or if she chose she could have recorded an abstract of judgment in Los Angeles County and achieve an equally effective lien. In either event the lien she would have obtained would be subject only to prior valid liens or titles. If any of the apparent encumbrances did not really exist, i. e., if they were fraudulent and void or voidable, or though once valid had been fully paid, all such were open to being contested. █ In the case of a fraudulent conveyance or mortgage the law regards such an instrument as being void, and accordingly "So far as existing creditors are concerned, the title and ownership of the property remains in the fraudulent grantor as fully as though no transfer had been attempted." (*First Nat. Bank of L. A.* v. *Maxwell*, 123 Cal. 360 [55 P. 980, 69 Am.St.Rep. 64].) █ Loose language found in some of the decisions in this state to the effect that all a judgment creditor acquires by a judgment lien, execution, levy, and sale is the "right, title, interest, and claim" of the debtor is inaccurate and too narrow. What the creditor attains is not only those rights but also, the specific right to exercise his own rights under the law.

There remains then for consideration only the question whether the appellant was entitled to equitable redemption

simply because the respondent knew, and the appellant did not, that the mortgage and the second trust deed were invalid.

Initially it needs to be observed that it is not accurate to say that respondent *knew* that the liens were invalid. What she knew was certain facts which she believed would be held by a court sufficient to declare the liens invalid. To have them so declared called for affirmative action on her part in the courts. The facts which respondent ascertained through her alertness, could as easily, if not more easily have been ascertained by the appellant in view of the fact she had been employed by Wight and shortly thereafter became his wife. But, that aside, the respondent owed plaintiff no duty to disclose what she knew and the law accords plaintiff no redress for her own neglect in ascertaining the facts and as a corollary acting upon them. (*Cf. Smith* v. *Randall,* 6 Cal. 47 [65 Am.Dec. 475] ; 21 Am.Jur. 179, 180.)

The decision below was correct and it is affirmed.

White, P. J., and Drapeau, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 19, 1951. Carter, J., voted for a hearing.