[No. G004203. Fourth Dist., Div. Three. May 31, 1988.]

Estate of LEOLA S. BAUMANN, Deceased.
IKEGAMI ELECTRONICS USA, INC., Petitioner and Respondent,
v.
JOHN S. BAUMANN, as Trustee, etc., et al., Objectors and
Appellants.

928

**COUNSEL**

Marks, Murase & White, Dane L. Miller and Douglas H. Morseburg for Petitioner and Respondent.

Bacon & Hamilton, Robert L. Bacon and Michael R. Gradisher for Objectors and Appellants.

**OPINION**

**SONENSHINE, Acting P. J.**—The son and grandsons of decedent Leola Baumann challenge a court order determining, upon principles of collateral estoppel, that certain property purportedly owned by Leola at her death was joint tenancy property and thus not subject to testamentary disposition. We conclude the court erred, as a matter of law, in failing to find the joint tenancy had been effectively severed during the decedent's lifetime and, accordingly, reverse.

I.

In July 1980, Leola purchased a condominium in Fullerton. After making a down payment of $20,000 towards the $81,500 purchase price, she took title in joint tenancy with her son, John, and his wife, Nancy. This was done to enable Leola to qualify for the loan and because of John's and Nancy's desire Leola's estate not be subject to probate on her death. John estimated he ultimately contributed about 10 percent towards the purchase price of the property and its maintenance.

Early in 1982, John encountered financial difficulties with his communications business. His corporation defaulted on certain debts he had person-

ally guaranteed to one of his suppliers, Ikegami Electronics. John's financial statement included his and his wife's joint tenancy interest in the Fullerton condominium.

On February 26, Ikegami sued John for breach of contract in United States District Court; John was served the same day. On February 28, John and his wife quitclaimed their interest in the Fullerton property to Leola.

On February 14, 1983, Ikegami obtained a judgment against John for $141,944.[1]

Leola died in July, leaving the condominium in trust to John's two sons, Christopher and Jeffrey. At the time of her death, the principal balance owing on the property was $60,839. John, as trustee and executor, proposed its sale through probate.

In March 1984, after learning of Leola's estate's purported interest in the Fullerton property, Ikegami objected to the probate court's confirmation of the proposed sale. Ikegami was unsuccessful, however, and the sale was confirmed. The property was sold for $90,000, with the proceeds held in trust by the estate's attorney, pending a determination of Ikegami's interest.

Later that month, Ikegami filed a second district court action, this time seeking declaratory relief and an order setting aside, as fraudulent, John's and Nancy's conveyance to Leola.[2] The children were not named as defendants. In March 1985, Ikegami obtained a summary judgment, the court having found John had a joint tenancy interest in the Fullerton property, his transfer was in fraud of creditors, and the transfer was null and void as to Ikegami.[3]

---

[1] In March 1983, John and Nancy filed for relief under Chapter 7 of the Bankruptcy Act. In February 1984, the bankruptcy court found Ikegami's lien was valid despite the intervening bankruptcy.

[2] Pursuant to stipulation between the parties, Nancy, having represented she at no time had any interest in the property, was later dismissed as a party.

[3] The judgment states: "IT IS ORDERED, ADJUDGED AND DECREED that: [¶] 1. Plaintiff's Motion for Summary Judgment is granted as to defendant John S. Baumann; [¶] 2. The transfer of any interest of John S. Baumann in [the Fullerton condominium] which occurred on or about February 28, 1982, is declared to be null and void as to plaintiff."

Findings of fact and conclusions of law filed contemporaneously with the judgment contain the following conclusions: "1. Baumann is presumed to have had a joint tenancy interest in the [Fullerton condominium]. Cal. Evid. Code § 662. Baumann has not shown that he can present clear and convincing evidence to rebut this presumption. [¶] 2. Because Baumann knowingly represented to Ikegami that he had a joint tenancy interest in such property and Ikegami reasonably relied on that representation and acted upon it to its detriment, Baumann is now estopped to assert, as against Ikegami, that he did not have a joint tenancy interest in the property. Cal. Evid. Code § 623. [¶] 3. By reason of the foregoing, as to Ikegami's claims, Baumann is deemed to have had a joint tenancy interest in the [Fullerton condominium]. [¶]

In August 1985, Ikegami sought an order in the Orange County Superior Court compelling distribution of the sale proceeds. It claimed the condominium was not properly part of the estate because it was quitclaimed to Leola through John's fraud and the company was entitled to the proceeds "by virtue of its prior recorded interest . . . ."

At the October hearing, John's lawyer, contending Leola and John never intended a "true" joint tenancy, noted Leola had made the entire down payment and all the monthly payments, including association dues. He said she put John and his wife on the deed solely "for convenience purposes." He further stated "Leola was under the impression that that joint tenancy had been severed by virtue of the deed that Nancy and John executed in 1982 conveying their interest, whatever it may be, back to her."

The court, having taken the matter under submission, rendered its ruling in January 1986. Noting the district court found the February 28, 1982, quitclaim to be null and void, and "[t]his had the effect of continuing the title to the property as joint tenancy," it concluded title to the Fullerton condominium rested in John upon Leola's death. It also ruled the district court judgment was binding on the parties, and that "[e]ven if it were not, John Baumann's admissions in his declaration are decisive."[4] The court's minute order states "the beneficiaries under the will of the decedent and John S. Baumann as Executor of the will of decedent claim they are entitled to introduce evidence that the parties never intended to create a joint tenancy. Just what evidence they have is not recited. There was no attempt to describe it nor to allege that it would be any different than the evidence, if any, presented to the United States District Court." Finally, the court ordered the proceeds from the sale of the property released from any claim by John (as executor or as trustee) or the Baumann children. A motion for reconsideration brought on behalf of John as trustee was denied, and a formal order was filed May 5, 1986.[5] This appeal followed.

---

4. Since this Court has heretofore found that Baumann was insolvent at the time he purportedly transferred his joint tenancy interest in the property, if such a transfer was made, it is null and void as to Ikegami, a creditor."

[4] Baumann's declaration alleged: "[B]ecause of our desire that my mother's estate, if possible, not be subject to probate on her death, AND FOR NO OTHER REASON, my wife and I agreed to take title to the property with my mother, all as joint tenants." (Italics in original.)

[5] The order reads, in pertinent part: "(1) The estate of Leola S. Baumann, deceased, has no interest in that property known as 1324A Victoria Drive, Fullerton, California, or the proceeds thereof, since title to such property vested, by operation of law, in John Baumann upon the death of Leola S. Baumann; and [¶] (2) The net proceeds of the sale of that real property commonly known as 1324A Victoria Drive, Fullerton, California, which proceeds are currently held by attorney Keith Welputt pursuant to an order of this Court, are hereby released from any claim of (i) John S. Baumann as executor of the estate of Leola S. Baumann; (ii) John S. Baumann as trustee of the trust established by the will of Leola S. Baumann, decedent; and (iii) from any claim of the children of John S. Baumann, including Christopher

## II.

▇  First, appellants contend the superior court lacked jurisdiction to entertain Ikegami's application to compel distribution of sales proceeds under Probate Code section 851.5 which provides, in pertinent part: "If a person dies in possession of, or holding title to, real or personal property which, or some interest in which, is claimed to belong to another, or dies having a claim to real or personal property, title to or possession of which is held by another, the executor, administrator, or any claimant may file with the clerk of the court a verified petition setting forth the facts upon which the claim is predicated. . . ."[6]

They acknowledge the probate court has jurisdiction, pursuant to section 851.5, to adjudicate a third party's claim to real property. But they contend jurisdiction attaches only where the third party seeks a declaration of *title, ownership* or *possession*. And, relying on *Estate of Sayles* (1982) 130 Cal.App.3d 275 [181 Cal.Rptr. 543], they argue Ikegami is not a proper third party petitioner because the company does not claim an interest in the Fullerton property; rather, it claims a right, as a lienholder, to levy on the proceeds of the sale.

*Estate of Sayles* is inapposite. There, the claimant argued she possessed an interest as the beneficiary of a deed of trust used to secure a promissory note. The court stated: "Since its enactment, cases decided under section 851.5 have required an 'interest' in real or personal property far more substantial than merely being the beneficiary of a trust deed securing a promissory note." (*Id.,* at p. 279.) Unlike the claimant in *Sayles,* Ikegami's motivation was to inform the court the property was not properly before the court because it was not a part of the estate. Thus, it was not *Ikegami's* interest which was adjudicated by the court. The issue presented was

---

John Baumann and Jeffrey Kevin Baumann, claiming as beneficiaries under the will of said decedent."

[6] Ikegami's petition was not actually brought under section 851.5. Rather, it was the probate judge who, at the hearing, categorized the matter as a section 851.5 proceeding. In fact, Ikegami's lawyer was apparently unaware of that section and asked the court for enlightenment: "[¶] MR. BACON: . . . . If we do the preliminary distribution, you'd still have to have probably down the road a petition to determine heirship. [¶] THE COURT: I don't think you need an heirship proceeding. You mean an 851.5. [¶] MR. MILLER: Your honor, I'm sorry. Could you expand on that. What's 851.5? [¶] THE COURT: That's a proceeding under the Probate Code where you can file a petition claiming that the property does not belong in the estate. [¶] MR. MILLER: Okay. [¶] THE COURT: And title can be tried in this court as to whether . . . it belongs to the estate or it belongs to somebody else. [¶] MR. MILLER: Okay. [¶] THE COURT: It's not an heirship proceeding as such. An 851.5 refers to the Probate Code section. [¶] MR. MILLER: I understand."

whether *John Baumann* had a joint tenancy interest in the property at his mother's death.[7]

## III.

■ Next, appellants complain the court erred in giving collateral estoppel effect to the district court judgment. They argue Leola's grandsons were not bound by that judgment because they were neither parties to the underlying action nor in privity with a party to that action, and their interests were not adequately represented by their father.[8] ■ ■ ■
■ ■ They further argue even if the children were in privity with John, the doctrine's application deprives them of their rights to due process and a jury trial.[9] They assert there is nothing in the record indicating the boys were even aware the district court adjudicated the status of the property. Again, we disagree.

■ The concept of privity "has been held to refer to an interest in the subject matter of litigation acquired after rendition of the judgment through or under one of the parties, as by inheritance, succession or purchase. [Citation.] The concept has also been expanded to refer to a mutual or successive relationship to the same rights of property, or to such an identification in interest of one person with another as to represent the same legal rights [citations] and, more recently, to a relationship between the party to be estopped and the unsuccessful party in the prior litigation which is 'sufficiently close' so as to justify application of the doctrine of collateral estoppel [citations]." (*Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 875 [151 Cal.Rptr. 285, 587 P.2d 1098].)

---

[7] Appellants also assert, in a footnote, the court had no jurisdiction to act on Ikegami's application because the application was not verified, as required by section 851.5.

In our view, the verification provided by Ikegami's attorney satisfied that requirement.

[8] Appellants contend John's interests were actually *adverse* to those of his children. They explain it would have been to John's advantage to lose the district court action in that his debt to Ikegami would then have been reduced by an amount equal to the value of the condominium. In contrast, the Baumann children would have benefitted had John prevailed in the district court action since a victory would mean John's conveyance to Leola was valid.

From a practical standpoint, and notwithstanding our conclusion the court properly applied the doctrine of collateral estoppel, we fail to see how John could *not* have had his children's best interests in mind while litigating the joint tenancy issue.

[9] Although Probate Code section 851.5 does not provide for a jury trial, Probate Code section 1230 has been held to so provide in cases where the code expressly authorizes issues of fact to be framed. (See *Heiser* v. *Superior Court* (1979) 88 Cal.App.3d 276, 279 [151 Cal.Rptr. 745].)

However, "any right to a jury trial . . . is only a right to submit to a jury issues of fact which are triable. When issues of fact have been conclusively resolved . . . in a prior . . . action, application of collateral estoppel to take those issues from the jury does not violate the . . . right to trial by jury." (*People* v. *Sims* (1982) 32 Cal.3d 468, 484, fn. 13 [186 Cal.Rptr. 77, 651 P.2d 321].)

■ Further, "[i]n the context of collateral estoppel, due process requires that the party to be estopped must have had an identity or community of interest with, and adequate representation by, the losing party in the first action as well as that the circumstances must have been such that the party to be estopped should reasonably have expected to be bound by the prior adjudication. [Citation.] Thus, in deciding whether to apply collateral estoppel, the court must balance the rights of the party to be estopped against the need for applying collateral estoppel in the particular case, in order to promote judicial economy by minimizing repetitive litigation, to prevent inconsistent judgments which undermine the integrity of the judicial system, or to protect against vexatious litigation. [Citations.]" (*Ibid.*)

■ Applying the foregoing principles, we are satisfied the district court judgment is binding on the Baumann children as beneficiaries of the trust created by Leola's will. As such, the trust is merely a derivative entity of the estate. Thus, any rights of the children in the property accrue solely through the estate which, of course, is bound because it was a party to the district court action. ■ "[W]hen a party acts in a representative capacity, and as such is lawfully authorized to litigate the questions at issue for those whom he represents, they as well as he are bound by the judgment. [Citation.]" (*Murdock* v. *Eddy* (1940) 38 Cal.App.2d 551, 554 [101 P.2d 722].) Moreover, "[o]ne who succeeds to the interests of a party in the property or other subject of the action, after its commencement, is bound by the judgment with respect to those interests in the same manner as if he were a party. [Citations.]" (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 290, p. 727; see also *Estate of Hanson* (1954) 126 Cal.App.2d 71, 77 [271 P.2d 563]; *Basore* v. *Metropolitan Trust Co.* (1951) 105 Cal.App.2d 834, 837 [234 P.2d 296]; *Luckhardt* v. *Mooradian* (1949) 92 Cal.App.2d 501, 519 [207 P.2d 579].)[10]

## IV.

Finally, appellants contend the court erroneously interpreted the district court judgment as holding John had an undivided ownership interest in the

[10]Our dissenting colleague declares "the ultimate nightmare of res judicata problems is manifest in this case." He predicts havoc will be wreaked when the superior court probates the estate's one-half interest in the condominium proceeds and the district court, at the same time, levies on the entire proceeds. His fear is unfounded.

Ikegami procured a pretrial writ of attachment against certain of John Baumann's property, including *Baumann's* interest in the Fullerton condominium. But this is not to say, as does the dissent, "[t]hat interest appears to include the entire property under the federal judgment."

Nor does the record on appeal support the conclusion "the federal judgment *must* mean the district court intended Ikegami to succeed to John Baumann's position as a surviving joint tenant." The district court concluded the deed was void as to Ikegami. It neither explained the effect of that conclusion nor ruled Ikegami could look to the Fullerton property, *in its entirety,* to satisfy the judgment.

Fullerton property. They acknowledge the district court found John's conveyance to be void as to Ikegami, and that John was estopped to assert he had no joint tenancy interest in the property. But they complain "[e]ven though John's attempted conveyance to Leola may be considered fraudulent as to Ikegami, it could still have terminated the right of survivorship and vested each party with a 50% tenancy in common interest." ■ Simply stated, they argue the quitclaim deed, though void, was sufficient to sever the joint tenancy. We agree.

A joint tenancy is terminated when one tenant conveys his or her entire interest to the other, thereby creating a tenancy in common. (*Hammond* v. *McArthur* (1947) 30 Cal.2d 512, 515 [183 P.2d 1]; see also 4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 276, p. 475.) This is precisely what happened when John executed a quitclaim deed conveying his interest in the property to his mother who, relying on that transfer, then bequeathed her interest to her grandsons. As far as Leola was concerned, the property was entirely hers. Not until after Leola died did Ikegami learn of Leola's ownership interest and what John had done to protect it. By then, the joint tenancy had been severed.

To be distinguished is *Estate of Casella* (1967) 256 Cal.App.2d 312 [64 Cal.Rptr. 259] where the fraud was committed by the grantee joint tenant. The court held "where one of the joint tenants has been induced fraudulently to convey his interest in the joint tenancy to his co-joint tenant, such act destroys the joint tenancy unities. . . . When the court set the deed aside, the joint tenancy relationship between the parties was restored, or rather, it was as though no deed had ever been executed . . . ." (*Id.,* at p. 323.) Here, no one was fraudulently induced to convey a joint tenancy interest to another. Rather, the fraud was directed at John's creditor who, ultimately, was successful in nullifying the deed's effect.

But the impact of the district court judgment was to void the deed *as to Ikegami* so that Ikegami could look to the interest John possessed at the time he personally guaranteed his corporation's debt. Indeed, in accepting John's guarantee, Ikegami relied on John's joint tenancy interest, not the entire property. ■ "One cotenant may encumber his undivided interest in property without the consent of the other tenants; the encumbrance affects his interest only. [Citations.] A creditor may levy only on the interest of the debtor joint tenant [citations]." (*Schoenfeld* v. *Norberg* (1970) 11 Cal.App.3d 755, 765-766 [90 Cal.Rptr. 47].) ■ Leola's death does not entitle Ikegami to any more than it was entitled to during her lifetime.

The order is reversed and the matter is remanded to the superior court with directions to vacate its order and to enter a new order reflecting, in

accordance with the views expressed herein, the estate of Leola Baumann has a one-half ownership interest in the subject property and/or the proceeds thereof. The parties are to bear their own costs.

Wallin, J., concurred.

**CROSBY, J.,** Concurring and Dissenting.—I would affirm. The probate judge correctly found the district court judgment was res judicata as to the existence of the joint tenancy on the day Leola Baumann died because the federal judge specifically held any attempt by the debtor to transfer his interest was "null and void" as to Ikegami. Thus, the federal judgment must mean the district court intended Ikegami to succeed to John Baumann's position as a surviving joint tenant. The estate either raised or should have raised and obtained a ruling in the district court on the issue which misleads the majority today.

I recognize that the federal judgment does not address the question of whether a joint tenancy may be severed and converted into a tenancy in common by a deed otherwise null and void, nor does the judgment literally purport to bind the Baumann estate at all. Both are troublesome problems; but the estate either did litigate, or should have, the severance issue in the federal proceeding and obtained a ruling with respect to its rights. Under res judicata principles litigants must raise all defenses and counterclaims in the first action. After judgment is entered, arguments and claims that could have been asserted but were not are precluded in a subsequent action. (*People* v. *Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321]; *Busick* v. *Workmen's Compensation Appeals Bd.* (1972) 7 Cal.3d 967, 975 [104 Cal.Rptr. 42, 500 P.2d 1386]; Rest.2d Judgments §§ 22, com. e, pp. 188-189 and 27, com. d, p. 255.)

It is of no moment that the district court may have erred in its application of California law: Res judicata applies to final decisions, correct or not. (*Slater* v. *Blackwood* (1975) 15 Cal.3d 791, 796-797 [126 Cal.Rptr. 225, 543 P.2d 593]; *Hollywood Circle, Inc.* v. *Dept. of Alcoholic Beverage Control* (1961) 55 Cal.2d 728 [13 Cal.Rptr. 104, 361 P.2d 712].) Moreover, the district court was probably right and my colleagues wrong on the merits. The district court's implied finding that a debtor's fraudulent transfer is not sufficient to destroy the right of survivorship in a joint tenancy as to the grantor's creditor, while apparently an issue of first impression, is supportable under California law: "In the case of a fraudulent conveyance or mortgage the law regards such an instrument as being void, and accordingly 'So far as existing creditors are concerned, the title and ownership of the property remains in the fraudulent grantor as fully as though no transfer had

been attempted.' [Citation.]" (*Gerry* v. *Northrup* (1951) 102 Cal.App.2d 449, 452 [227 P.2d 857].)

Finally, the ultimate nightmare of res judicata problems is manifest in this case. The district court previously attached the debtor's interest in the property. That interest appears to include the entire property under the federal judgment. If the superior court attempts to probate the decedent's spurious tenancy in common as the majority directs and the district court levies on the whole, a very likely scenario, how are the conflicting orders to be reconciled? Instead of placing the trial courts on a collision course, we should defer to the federal forum. When Ikegami seeks to execute on the federal judgment, let the estate raise the arguments it urges here and let the district court resolve any ambiguity concerning the scope of its judgment. If that court permits execution on but one-half of the proceeds of the sale of the condominium, *then* the probate court may distribute the balance according to the will of Leola Baumann. If the district court permits Ikegami to execute on the whole, the estate should be left to any available appellate remedy in the *federal* system.

The majority does not solve a problem by its disposition of this appeal; it creates one. I would affirm the judgment in its entirety.

Respondent's petition for review by the Supreme Court was denied September 29, 1988.